******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## WENDY J. DEJANA *v.* MICHAEL DEJANA
### (AC 38884)

Keller, Prescott and Beach, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court denying her postjudgment motion for contempt, in which she alleged that the defendant had not paid her the full amount due for unallocated alimony and child support as required under the parties' separation agreement, which had been incorporated into the dissolution judgment. On appeal, the plaintiff claimed that the court, in declining to hold the defendant in contempt, improperly interpreted the separation agreement. Specifically, she claimed that the defendant did not pay her support from that portion of his compensation that was comprised of moneys declared as income on his income tax return from a certain long term incentive stock award program offered by his employer. The court had found that the separation agreement gave the defendant the right to apply all or a portion of the funds in dispute to the college education expenses of the parties' child without any claim by the plaintiff to receive any portion of those funds for her benefit. *Held*:

1. Contrary to the defendant's assertion, the plaintiff's claim that the trial court should have awarded her an arrearage consisting of 30 percent of the defendant's compensation from the stock incentive program for additional unallocated alimony and child support owed was preserved and considered by the trial court and, therefore, was reviewable on appeal; although the trial court noted in its memorandum of decision that the basis of the plaintiff's claim that her unallocated alimony and child support had been underpaid was that she was entitled to receive a percentage of the defendant's income from the funds of the stock incentive program, the court determined that the plaintiff was not entitled any percentage share of those funds, which, pursuant to the terms of the parties' separation agreement, were expressly reserved to the defendant for use in paying the son's college expenses.

2. The trial court did not abuse its discretion in denying the plaintiff's postjudgment motion for contempt, the defendant having complied with the provision of the separation agreement governing unallocated alimony and child support; the trial court properly determined that the language of the separation agreement that required the defendant to pay the plaintiff 40 percent of his base salary and 30 percent of his annual bonus as unallocated alimony and child support was clear and unambiguous, and required the defendant to pay unallocated alimony and child support based on a percentage of his base salary and annual incentive cash bonus, and to use the entirety of any income he received from his stock incentive program to fund his son's college education, and although the plaintiff would have liked the income from the stock incentive program to have been considered a form of bonus compensation from which the defendant would be required to pay her 30 percent of the value, the court correctly construed the specific language of the agreement as awarding all funds derived from the stock incentive program to the defendant for the purpose of paying the son's college expenses, as the specificity of the permitted usage of the stock incentive funds to meet the defendant's obligation for college expenses as set out in the separation agreement controlled and was given greater weight than the general definition of the word bonus, so as not to render any provision of the agreement superfluous.

Argued April 18—officially released September 5, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Marano, J.*; judgment dissolving the marriage and granting certain

other relief in accordance with the parties' separation agreement; thereafter, the court, *Sommer, J.*, denied the plaintiff's motion for contempt, and the plaintiff appealed to this court. *Affirmed.*

*James H. Lee*, for the appellant (plaintiff).

*Dori-Ellen S. Feltman*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Wendy J. Dejana, appeals from the judgment of the trial court denying her postjudgment motion for contempt against the defendant, Michael Dejana. On appeal, the plaintiff claims that the court, in declining to hold the defendant in contempt, improperly interpreted the parties' separation agreement, which had been incorporated into the judgment of dissolution. In support of this claim, the plaintiff argues that the court improperly determined that the separation agreement (1) required the defendant to pay unallocated alimony and child support based upon a percentage of his base salary and annual incentive cash bonus, and (2) permitted the defendant to use the entirety of the income he received from vested stock units, pursuant to his employer's long-term incentive program, to fund the private college education of the parties' son. We affirm the judgment of the court.[1]

The following factual and procedural history is relevant to our resolution of the plaintiff's claims. On April 21, 2015, the plaintiff filed a postjudgment motion for contempt, claiming, inter alia, that the defendant had not paid her the full amount due for unallocated alimony and child support since 2010. On September 2, 2015, and December 16, 2015, a hearing on the motion was held before the court at which both parties testified and presented other evidence.

In its memorandum of decision, the court found the following facts and procedural history. "The marriage of the plaintiff and the defendant was dissolved on January 9, 2009. Among the orders entered by the court at the time of dissolution were unallocated alimony and child support orders set forth in article VIII of their separation agreement. [The plaintiff] has filed a motion for contempt, dated April 10, 2015, in which she alleges, inter alia, that the defendant mischaracterized his 2010–2013 compensation as base salary, resulting in [the] plaintiff receiving $84,821 less than she was entitled to receive. . . .[2]

"Article VIII of the separation agreement sets forth the terms of the parties' agreement regarding unallocated alimony and child support.[3] In addition to the alimony and support obligations set forth in paragraph 8.1 of [that article of] the separation agreement, the parties further agreed in article VII, [paragraph] 7.1, that the defendant would be obligated to pay all of the undergraduate college education expenses for the parties' minor son . . . . The agreement provided that the defendant shall have the option of fulfilling this obligation by scholarships and grants obtained by [the parties' son] and the use of [the defendant's Long-Term Incentive Award Program (LTIP), or as it is alternatively referenced, Performance Stock Deferred Plan, an award program established by his former employer, the Royal

Bank of Canada (bank)].[4]

"The parties do not dispute the following facts. [Their son] attended Trinity College from September, 2011, until he graduated in May, 2015, at a total cost of approximately $240,000. Pursuant to the parties' separation agreement, [the] defendant paid all of [the son's] college expenses. In compliance with the parties' separation agreement, [the] defendant utilized the funds in his [LTIP] to pay for . . . college expenses at Trinity College. [The defendant] received $225,746 from the [LTIP] program, net of taxes. He paid Trinity College $235,021 using funds from the . . . LTIP account in full, and supplementing his obligation to pay for [his son's] education from other funding sources. [The defendant] is no longer employed by [the bank] and is therefore no longer entitled to participate in, or receive benefits from, the [LTIP]. Following [their son's] graduation from Trinity College, [the] plaintiff filed the within motion for contempt, alleging that [the defendant] did not pay her the proper amount [of] unallocated alimony and child support, as required by the terms of the separation agreement. In simplest terms, [the] plaintiff's claim arises from the fact that [the] defendant did not pay [the] plaintiff support from that portion of his compensation which was comprised of mon[eys] declared as 'income' on his income tax return from [the LTIP].

"[The plaintiff] called Dr. Daniel Purushothan in support of her claim that the LTIP mon[eys] [the] defendant received should be included in the calculation of her alimony payment. [Purushothan] was qualified to testify on the issue of executive compensation as related to [the] defendant's compensation. He provided a clear explanation of executive compensation. In this case, as noted, [the] defendant received, in addition to a base salary, a portion of his compensation as income pursuant to the [LTIP] established by his [former] employer, [the bank]. . . . Purushothan testified that, as an individual rises through the executive ranks, the proportion of [his] income attributed to regular salary diminishes, and the individual receives a higher proportion of income based on variable factors, such as bonuses or equity in the organization. In this case, [the] defendant's income is comprised of a base salary, annual incentive or cash bonus [(annual incentive cash bonus)] and the [LTIP].

"Notwithstanding the testimony of . . . Purushothan, at the time of dissolution, the parties themselves had determined how the portion of the defendant's income which was derived from his participation [in the bank's LTIP] award program should be utilized. That agreement clearly gave the defendant the right to apply those funds to their son's college education.

"The court has carefully considered the evidence and testimony presented and has applied the facts to the terms of the parties' [separation] agreement. Based on

the foregoing, the [court] concludes that the plaintiff is attempting to require the defendant to pay her a portion of the LTIP income as alimony when she has already agreed that these funds shall be applied to [their] son's education expenses. There is no limitation on the defendant's right to use the LTIP income for [the son's] college expenses. The parties could have provided that the portion of the . . . LTIP income remaining, net of any percentage paid as alimony, could be applied to . . . college expenses. They did not do so. The terms of the separation agreement are clear.

"The plaintiff has not sustained her burden of proving that the defendant has failed to pay her alimony as ordered by the court at the time of dissolution and that she has been . . . underpaid. [The plaintiff's] argument would require a finding that she was entitled to receive a percentage of the defendant's income from the . . . LTIP program and that, only thereafter, could the defendant apply the LTIP mon[eys] to pay for their son's college education. As agreed by the parties at the time of dissolution, the defendant had the option, i.e., it was his sole right to apply all or any portion of the funds in the LTIP account from that source to pay for the . . . college education [of the parties' son] without any claim by the plaintiff to receive any portion of the LTIP funds for her benefit." (Footnotes added.)

The court denied the plaintiff's motion for contempt and counsel fees. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the defendant's assertion that the claim that the plaintiff presents on appeal was not preserved in the trial court and, therefore, we should decline to review it. We are not persuaded by this argument.

The defendant claims that the plaintiff asserts for the first time on appeal that the defendant's arrearage "comes to about $100,000," based upon a new theory of the case: that the defendant paid her the correct percentage of his base salary and annual incentive cash bonus, but that, pursuant to article VIII, paragraph 8.1, of the separation agreement, he also should have paid her 30 percent of the income realized annually from the LTIP as additional unallocated alimony and child support.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is

too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Bellamy*, 323 Conn. 400, 454–55, 147 A.3d 655 (2016).

The defendant correctly points out that this claim differs substantially from the allegation made in the plaintiff's motion for contempt, that the defendant owed her $84,821[5] because he "mischaracterized his 2010 and 2011 income as base salary rather than bonus," and from an entirely different claim that was presented by the plaintiff during the contempt hearing, that the defendant owed her approximately $193,000 because he should have paid the plaintiff 40 percent of his total income, including his base salary, annual bonus, and the annual vested value of his stock units in the LTIP.

After thoroughly reviewing the record, we conclude, however, that the court interpreted certain representations made by the plaintiff as a third, alternative claim, now constituting the plaintiff's claim on appeal, which was rejected by the court. During the hearing, the court made several efforts to clarify the precise nature of the basis for the plaintiff's contempt motion. Midway through the second day of the contempt hearing, the defendant raised a due process claim on the basis of the plaintiff's lack of clarity as to her allegation of contempt. The court engaged in a lengthy discussion with the plaintiff's counsel regarding this lack of clarity, but determined that, essentially, the plaintiff was asserting an underpayment on the part of the defendant of his obligation under article VIII, paragraph 8.1, of the separation agreement, and given the amount of evidence that already had been presented, the court allowed the plaintiff to continue pursuing her motion despite the defendant's objection. At one point, however, the court characterized the plaintiff's claim as follows:

"The Court: Isn't the plaintiff's claim a matter of setting forth for the court a mathematical chart that says here's what I claim I'm entitled to? I, the plaintiff. Forty percent of the—

"[The Plaintiff's Counsel]: Right

"The Court: —base salary. The salary. Thirty percent of the [annual incentive cash bonus]. And according to the plaintiff's claim, if I understand correctly, also 30 percent of the [LTIP], because the plaintiff's argument is that the [LTIP] and the [annual incentive cash bonus] are both in that category. Isn't that what the plaintiff is claiming?

"[The Plaintiff's Counsel]: "We're claiming exactly that, the [LTIP] and [the annual incentive cash bonus] both belong in—in the general—

"The Court: Well, it's not exactly clear from this."

The defendant testified that, in accordance with his

interpretation of the separation agreement, he paid the plaintiff 40 percent of his semimonthly, base salary paycheck, and at the end of each year, when he was awarded his annual incentive cash bonus, he paid the plaintiff 30 percent of that. He further testified that he used all the income he received from his LTIP to pay for the college expenses of the parties' son, and that he actually incurred a shortfall after exhausting the LTIP funds.

Later during the hearing, counsel for the plaintiff indicated that one of the bases for the plaintiff's claim of an arrearage being owed to her is that the defendant "should have paid [the plaintiff] a portion of the vested LTIP shares as he received them . . . in addition to . . . using [them] to pay for college," and that the LTIP, as part of the defendant's total direct cash compensation, should be treated as either base or bonus salary.[6]

At the conclusion of the hearing, during the plaintiff's testimony, she referred to a spreadsheet of calculations she had prepared in support of her claim, and she requested that the court either find that the defendant should have been paying her, as unallocated alimony and child support, 40 percent of his total compensation, including his base salary, annual incentive cash bonus, and the LTIP funds, *or in the alternative*, 40 percent of his base salary, 30 percent of his annual incentive cash bonus, and 30 percent of his LTIP income.

We therefore conclude that the claim on appeal—that the court should have awarded the plaintiff an arrearage consisting of 30 percent of his LTIP compensation for additional unallocated alimony and child support owed—was preserved, albeit somewhat inartfully, and considered by the trial court. In its memorandum of decision, the court noted that the basis of the plaintiff's claim that her unallocated alimony and child support had been underpaid was that she was entitled to receive a percentage of the defendant's income from the LTIP funds. Although this alleged percentage owed, as claimed by the plaintiff, was either 30 percent or 40 percent, the court ruled that the plaintiff was entitled to no percentage share of the defendant's LTIP income, as that income was expressly reserved to the defendant by the terms of the separation agreement for use in paying the son's college expenses.

II

We next address both aspects of the plaintiff's claim together, as they each involve the court's interpretation of the parties' separation agreement, and are interrelated.

We begin with general principles and the applicable standards of review. The order at issue in the present case is contained in the parties' separation agreement, which was incorporated into the court's judgment of dissolution. "It is well established that a separation

agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted *in the light of the situation of the parties and the circumstances connected with the transaction.* . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." (Emphasis in original; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015).

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 192, 112 A.3d 144 (2015).

The plaintiff claims that the court improperly interpreted the parties' separation agreement as (1) requiring the defendant to pay unallocated alimony and child support based upon a percentage of his base salary and annual incentive cash bonus, and (2) permitting the defendant to use the entirety of the income he received from vested stock units pursuant to his former employer's LTIP to fund the private college education of the parties' son. The defendant argues that the court properly interpreted the plain and unambiguous language

of the separation agreement as requiring the defendant, under article VIII, to pay unallocated alimony and child support based upon a percentage of his base salary and annual incentive cash bonus, and permitting the defendant under article VII to use the entirety of any income he received from his LTIP to fund his son's college education. We agree with the defendant.

At the time of the parties' divorce in 2009, the defendant worked at the bank, and the parties had one minor child. The defendant's compensation from the bank consisted of three components: (1) a base salary; (2) an annual incentive cash bonus paid in December of each year; and (3) the LTIP, an award of stock units that automatically vested three years after each award of stock was made.

The parties' separation agreement addressed the three components of the defendant's compensation package in two separate and independent provisions.

The first two components of the defendant's compensation, specifically, the defendant's base salary and annual incentive cash bonus, are indisputably addressed in article VIII, entitled "Unallocated Alimony and Child Support." That article sets forth that the defendant would pay to the plaintiff 40 percent of his base salary and 30 percent of his annual bonus as unallocated alimony and child support until the earlier of the defendant's death, the plaintiff's death or remarriage, or thirteen and one-half years from the first payment, with the percentages reduced to 35 percent of the defendant's base salary and 25 percent of the defendant's bonus on April 1, 2012.[7] Although, during the contempt hearing, the plaintiff also argued that all three compensation components were part of the defendant's base salary, she now concedes on appeal that there is no dispute as to the precise meaning of "base salary," which consists of the semimonthly gross salary paid to the defendant by the bank, 40 percent of which was to be paid to the plaintiff upon receipt. The parties also do not disagree over the inclusion of the annual incentive cash bonus within the meaning of the word "bonus" in paragraph 8.1 of article VIII of the separation agreement.

The dispute centers around whether, in addition to the annual incentive cash bonus that the defendant received every December 15, the term "bonus," in paragraph 8.1 of article VIII, also includes the income derived from the defendant's vested LTIP stock awards. To resolve the claim presented in this appeal, we must determine whether the court properly concluded that article VII, paragraph 7.1, of the separation agreement unambiguously provides that the defendant could use his existing and future LTIP income toward the payment of college expenses. That issue presents a question of law over which our review is plenary to determine if the court's conclusions are legally and logically correct.

See *Flaherty* v. *Flaherty*, 120 Conn. App. 266, 269, 990 A.2d 1274 (2010).

The plaintiff relies on a broad definition of "bonus," the word used in article VIII, paragraph 8.1, to support her claim that the defendant also was ordered to pay her 30 percent of the value of the income from his vested LTIP stock awards, since "bonus" has been expansively defined as "money or an equivalent given in addition to the usual compensation." (Emphasis omitted; internal quotation marks omitted.) *Ziotas* v. *Reardon Law Firm, P.C.*, 111 Conn. App. 287, 295, 959 A.2d 1013 (2008) (citing definition of "bonus" in Webster's Third New International Dictionary), rev'd in part on other grounds, 296 Conn. 579, 997 A.2d 453 (2010).

The defendant counters that although the LTIP generally might be considered as a form of bonus compensation, the court correctly construed the specific language of paragraph 7.1 of article VII, entitled "Educational Expenses," as awarding all funds derived from the LTIP compensation to the defendant for the purpose of assisting him in paying the college expenses of the parties' son.[8] We agree with the defendant.

The record reveals that the court in the present case determined that the contractual language in article VII, paragraph 7.1, clearly and unambiguously provided that the LTIP funds the defendant received as additional compensation prior to and after the marriage dissolution were specifically reserved for the defendant's use in paying the college education expenses of the parties' son. As a result, viewing the contract as a whole, the LTIP funds were necessarily excluded from the reference to bonus income in article VIII, paragraph 8.1, which described how the amounts of the defendant's payments of unallocated alimony and child support were to be calculated. Significantly, the court did not articulate any factual findings with respect to the intent of the parties in enacting the contractual language at issue. Had the court found article VII, paragraph 7.1, to be ambiguous, it necessarily would have made factual findings as to the intent of the parties. See *Fazio* v. *Fazio*, 162 Conn. App. 236, 250, 131 A.3d 1162 (ambiguity in separation agreement "required" trial court "to make a finding of fact as to the parties' intent"), cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016). No such findings are reflected in the record before us.

Article VII, paragraph 7.1, provides in relevant part that the defendant "shall have the option of fulfilling [his] obligation [for paying the costs of four years of college education] in whole or part by obtaining any scholarships or grants which are obtained by the child and the use of his [LTIP] . . . ." Although the agreement notes the vested and unvested value of the LTIP as of December 21, 2008, the year prior to the date of the parties' marriage dissolution, it does not limit the dollar amount the defendant can access from

the fund.[9] There is no reference in paragraph 7.1 that, for the purpose of paying college expenses, the defendant can use only the LTIP income remaining net of any percent paid as unallocated alimony and child support. In fact, paragraph 7.1 provides that the defendant must fulfill his total educational obligation even if the LTIP decreases in value in the future, which implicitly acknowledges that the value of the fund might increase or decrease in future years and, therefore, the LTIP might not entirely provide the defendant with the means to pay the son's college expenses.[10]

Although the plaintiff would like to have the expansive general definition of the word "bonus" applied to incorporate the LTIP funds into paragraph 8.1 of article VIII for the purpose of calculating unallocated alimony and child support, the specificity of the permitted usage of the LTIP funds to meet the defendant's obligation for college expenses in paragraph 7.1 of article VII should control and be given greater weight than the general definition of the word "bonus." See 2 Restatement (Second), Contracts § 203 (1981). If the parties had intended that the defendant would pay the plaintiff a percentage of his LTIP income annually to the plaintiff, there was no reason to include any language in article VII specifically permitting him to use the funds for college expenses; he would not have needed permission to spend the remaining percentage, after paying unallocated alimony and child support, in any way he chose. We decline to interpret the language of article VII referencing the LTIP funds in a manner that would render this provision superfluous. "When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 462, 870 A.2d 1048 (2005).

We further note that the separation agreement, in article XXIV, incorporates into and makes part of the agreement the financial affidavits of both parties that were filed at the time of the marriage dissolution in January, 2009. The agreement provides that it is "expressly understood that the terms of this agreement and the financial arrangement hereunder were made upon the representations contained in said affidavits," and that "the parties hereto relied upon said representations in executing this agreement." This is significant because the defendant's financial affidavit references only one "bonus," the annual incentive cash bonus, which he listed, along with his base salary, as part of his weekly income. The LTIP fund was not listed as bonus income, but rather as an asset, on the defendant's financial affidavit. The fact that the financial affidavit includes only the annual incentive cash bonus as bonus income lends further support to the court's determination that the LTIP income was not part of the bonus

referred to in article VIII, which governed unallocated alimony and child support.

The court correctly determined that the language in article VII, paragraph 7.1, of the separation agreement was clear and unambiguous, and effectively removed the LTIP funds from the calculation of the 30 percent of bonus income contemplated in article VIII, paragraph 8.1, of the unallocated alimony and child support provision of the agreement. The defendant, therefore, had complied with paragraph 8.1 of the separation agreement. Accordingly, the court did not abuse its discretion in denying the plaintiff's postjudgment motion for contempt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although not clearly expressed in the plaintiff's statement of issues, we presume that the plaintiff is also claiming that the court erred in denying her motion for contempt.

[2] The court noted that the "[p]laintiff further submits that the amount of alleged underpayment for 2014 has not yet been determined."

[3] Article VIII of the parties' separation agreement is entitled, "Unallocated Alimony and Child Support." Paragraph 8.1 of article VIII provides: "The Husband, during his lifetime, shall pay to the Wife as alimony, immediately upon receipt of each of his base salary paycheck[s], forty (40%) percent of the gross amount of the base salary and thirty (30%) percent of any bonus upon receipt of same. Commencing April 1, 2012, the percentages shall be reduced to thirty-five (35%) percent with respect to the base salary and twenty-five (25%) percent with respect to the bonus."

[4] Article VII of the parties' separation agreement is entitled, "Educational Expenses." Paragraph 7.1 of article VII provides in pertinent part: "The Husband shall be responsible for and shall pay the costs of four (4) years of undergraduate college education leading to a bachelor's degree for the parties' minor child under only the following terms and conditions:

"(a) College education costs shall be defined as room and board, tuition, books, registration, laboratory, and special fees, reasonable travel to and from school, allowance, and ordinary miscellaneous fees.

"(b) College education shall be defined to include but not be limited to a four (4) year undergraduate program in any college or university, junior college, technical, vocational, secretarial or trade school.

"(c) The Husband shall have the option of fulfilling this obligation in whole or part by obtaining any scholarships or grants which are obtained by the child and the use of his [LTIP] with a current vested value of approximately $23,000 as of December 21, 2008, and a vested and unvested value of approximately $76,000. The Husband acknowledges his educational obligation hereunder even if the [LTIP] decreases in value. . . ."

[5] The plaintiff's counsel claimed during the second day of the hearing that this language in the motion for contempt was a "typo," and should have read the other way around, i.e. that the defendant mischaracterized his income as bonus salary rather than base salary. It would be nonsensical to claim that the defendant mischaracterized bonus income as base salary, which would have resulted in his paying more than he was obligated to under the separation agreement. Although the plaintiff's counsel indicated that she would amend the motion to conform to the proof adduced at the contempt hearing, no amendment was ever filed.

[6] Treating the LTIP as either a base or bonus salary which was included in paragraph 8.1 of article VIII of the parties' separation agreement would have required the defendant to pay either 40 percent or 30 percent of the LTIP income to the plaintiff.

[7] Subsequent to the date of the dissolution of their marriage, on October 1, 2013, the plaintiff and the defendant reached an agreement to modify the dissolution judgment and eliminate the reduction in the percentages to be paid from April 1, 2012, to the date that their child attained the age of twenty-two on September 11, 2015. This agreement, which was in writing, modified the terms of the judgment, but was never made an order of the trial court. The defendant testified that he complied with this modification

agreement. The issue of whether the defendant should be credited with any additional amounts paid pursuant to the terms of this agreement, although discussed during the contempt hearing, was not addressed by the court and has not been raised on appeal.

[8] Pursuant to the terms of the separation agreement, the plaintiff was not obligated to pay for any of the college expenses of the parties' son.

[9] This provision for the payment of the son's college expenses was quite generous. It does not include any of the limitations that would have been imposed pursuant to an educational support order entered in accordance with General Statutes § 46b-56c (f). The defendant agreed to be responsible for private college tuition, room and board. He also agreed to a host of additional expenses related to the son's attendance at college, including an allowance.

[10] In fact, the defendant testified that he used all of the LTIP funds for college expenses, but that those funds did not cover all of his expenditures for his son's college education.

———————————————————