******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ROBIN BOGDA *v.* BRIAN BOCHENEK, EXECUTOR (ESTATE OF BARBARA H. UTERSTAEDT) (AC 47825)

Elgo, Moll and DiPentima, Js.

*Syllabus*

The plaintiff appealed from the trial court's summary judgment for the defendant executor in her action seeking damages for, inter alia, breach of contract with respect to a settlement agreement that the two parties had entered into with respect to the defendant's action alleging that the plaintiff had unduly influenced the decedent to name the plaintiff as a joint owner of a brokerage account held at J Co. After the settlement agreement had been executed, the defendant filed an arbitration action against J Co. alleging that J Co. had failed to detect the plaintiff's alleged undue influence related to the brokerage account and seeking the remaining money in the brokerage account that he had not received under the settlement agreement. J Co. named the plaintiff as a third-party respondent in the arbitration, seeking indemnification. The arbitration panel denied the defendant's claims and J Co.'s third-party claims against the plaintiff, and she thereafter brought the action underlying the present appeal, claiming that the arbitration action constituted an indirect claim against her that was prohibited by the settlement agreement. On appeal, she claimed, inter alia, that the court improperly determined that she lacked standing to bring her claims. *Held*:

Although it was unclear whether the trial court decided the issue of standing, this court concluded that the plaintiff did have standing to bring her claims, as the allegations in the plaintiff's complaint set forth a colorable claim of injury establishing the possibility that her legally protected interests in the defendant abiding by the terms of the settlement agreement had been adversely affected.

The trial court, having incorrectly determined that the defendant's pursuit of the arbitration was not prohibited by the terms of the settlement agreement, improperly rendered summary judgment for the defendant, as the express language used in the settlement agreement denoted its broad scope and its paramount purpose that the parties were released from further claims against each other, and there were genuine issues of material fact as to the plaintiff's claims, including what the defendant knew at the time of the arbitration and the nature of his intent.

Argued September 4—officially released November 18, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior

Court in the judicial district of New London, where the court, *Papastavros*, *J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Brian O'Donnell*, with whom was *Samantha Marie Passanante*, for the appellant (plaintiff).

*Joseph A. Hourihan*, with whom were *Benjamin R. Godley* and *Teresa Capalbo*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Robin Bogda, appeals from the judgment of the trial court rendering summary judgment in favor of the defendant, Brian Bochenek, executor of the estate of Barbara H. Uterstaedt.[1] On appeal, the plaintiff claims that, in misconstruing the term "indirect" claims, the court improperly determined (1) that the plaintiff lacked standing and (2) there were no genuine issues of material fact that the defendant did not breach the terms of the parties' agreement to release each other from any lawsuits and claims. We determine that the plaintiff has standing and reverse the judgment of the trial court rendering summary judgment in the defendant's favor.

The record, viewed in the light most favorable to the plaintiff for purposes of reviewing the trial court's summary judgment ruling; see *Cefaratti* v. *Aranow*, 321 Conn. 637, 641, 138 A.3d 837 (2016); reveals the following facts. Uterstaedt was the sole owner of a brokerage account at the financial advisory firm Janney Montgomery Scott, LLC (Janney account). On February 26, 2020, Uterstaedt executed a document making her daughter, the plaintiff, a joint owner of the Janney

---

[1] All references in this opinion to the defendant are to Bochenek in his capacity as the executor of Uterstaedt's estate.

account. On March 18, 2020, Uterstaedt died, leaving the plaintiff as the sole owner of the Janney account.

In May, 2020, the defendant, the nephew of Uterstaedt, brought an action in the Superior Court (2020 action) against the plaintiff and Nancy McMahon, the plaintiff's sister, alleging that they unduly influenced Uterstaedt to name the plaintiff as a joint owner of the Janney account, which the plaintiff and McMahon denied. On or about March 2, 2021, the plaintiff, McMahon, and the defendant reached a settlement agreement by which they resolved the 2020 action and released each other from "any and all manner" of claims relating to, inter alia, the Janney account. Pursuant to the terms of the settlement agreement, the defendant withdrew the 2020 action and, in exchange, the plaintiff and McMahon agreed to pay the Uterstaedt estate, of which Bochenek, in his individual capacity, was the sole beneficiary, approximately one half of the money that had been in the Janney account.

On or about June 24, 2021, the defendant initiated an arbitration action against Janney Montgomery Scott, LLC (Janney), by filing a statement of claim against Janney with the Financial Industry Regulatory Authority. In his arbitration demand, the defendant alleged that the plaintiff had unduly influenced Uterstaedt to name her as a joint owner of the Janney account and that Janney failed to detect and halt that alleged undue influence. The defendant sought from Janney an amount equal to the one half of the money in the Janney account that he had not received under the settlement agreement.

On or about August 18, 2021, Janney named the plaintiff as a third-party respondent in the arbitration, seeking from the plaintiff contractual indemnification, common-law indemnification, and contribution. In its third-party claim, Janney asserted that, pursuant to the terms

of a contract it had with the plaintiff (Janney/Bogda contract), the plaintiff was liable to it for any amounts that Janney must pay to the defendant. Following arbitration hearings on May 24 through 27 and June 17, 2022, the arbitration panel denied the defendant's claims, as well as Janney's third-party claims against the plaintiff.

In 2022, the plaintiff brought the action underlying this appeal in a three count complaint against the defendant. In the operative amended complaint, the plaintiff alleged that (1) by commencing and persisting in the arbitration against Janney while knowing that Janney sought both common-law and contractual indemnification from the plaintiff, the defendant breached the terms of the settlement agreement (breach of contract),[2] (2) knowing that his arbitration claims were in direct contravention of a material term of the settlement agreement, the defendant continued to pursue his arbitration claims, thereby recklessly, wantonly, deliberately, maliciously, and callously disregarding the spirit of the settlement agreement (breach of implied covenant of good faith and fair dealing),[3] and (3) the defendant initiated proceedings against the plaintiff with malicious intent

[2] "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 117 Conn. App. 550, 558, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009).

[3] "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 240, 915 A.2d 290 (2007).

to vex or harass her (vexatious litigation pursuant to General Statutes § 52-568).[4]

On December 5, 2023, the defendant filed a motion for summary judgment, arguing in his accompanying memorandum of law that no genuine issues of material fact exist that the terms of the settlement agreement were not breached because he did not seek damages from the plaintiff, he did not bring the plaintiff into the arbitration, and he was not a party to the Janney/Bogda contract. The plaintiff filed a memorandum in opposition.

The settlement agreement, titled "Mutual General Release," which was appended to the defendant's motion for summary judgment, provides in relevant part that "IN CONSIDERATION OF the mutual promises contained herein, and for other good and valuable consideration, BRIAN BOCHENEK, Executor of the Estate of BARBARA H. UTERSTAEDT, ROBIN BOGDA of Colchester, Connecticut, and NANCY McMAHON of Newington, Connecticut, hereby remise, release and discharge each other of and from any and all manner of action and actions, cause and causes of action, suits, claims, debts, dues, demands, sums of money, accounts, reckonings, bonds, bills, specialties, variances, judgments, executions, promises, damages, warranties, attorney fees, liabilities of every kind and character, *direct and indirect*, known and unknown, of whatever kind or nature, in law or in equity, under tort or contract,

---

[4] "The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages. . . . [T]o establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 553–54, 944 A.2d 329 (2008).

arising under any provisions of law of the United States, the State of Connecticut, or any other states, that the Parties now have, had, claim to have, claim to have had, may have, or may have had, *including but not limited to any claims related to or concerning the* [*Janney*] *account*, under which an action is pending in the Superior Court of Connecticut, Docket: TTD-CV-20-6020563-S. The Parties hereby acknowledge that the foregoing includes any claims against each other from the beginning of the world to the execution of this Release which are completely remised, released and discharged." (Emphasis added.)

On July 2, 2024, the court rendered summary judgment in favor of the defendant. The court framed the issues presented to it as follows. "The issue before the court is whether the court should grant the defendant's motion for summary judgment, on the grounds that the defendant: (1) did not violate the settlement [agreement] because he did not seek any damages post release from the plaintiff; (2) did not bring the plaintiff into the arbitration; and (3) was not a party to the [Janney/Bogda contract]." The court noted that "[t]he defendant argues that he did not violate the terms of the settlement [agreement] because he did not sue the plaintiff, but instead arbitrated with a party (Janney) that was not included in the release, and, therefore, there is no genuine issue of material fact as to whether he breached the terms of the settlement [agreement] with the plaintiff. Contrarily, the plaintiff argues that the arbitration between the defendant and Janney was an 'indirect claim' against her that was specifically barred by the settlement [agreement] between the defendant and herself, therefore suggesting that the defendant breached the terms of the settlement [agreement]."

In granting the defendant's motion for summary judgment, the court reasoned that "there is no genuine issue of material fact regarding the terms of the settlement

[agreement]. The parties agreed in the settlement [agreement] to release each other from any lawsuits and claims. Janney, not the defendant, included the plaintiff as a third-party respondent in the arbitration. This case, therefore, is barred by the original terms of the parties' settlement [agreement]."

We begin our discussion with the following well established legal principles and standard of review. Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

"As an appellate court, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Nationstar Mortgage, LLC* v. *Mollo*, 180 Conn. App. 782, 791–92, 185 A.3d 643 (2018).

I

The plaintiff claims that the court erred in concluding that she lacked standing. Although the memorandum of decision raised the issue, it is unclear as to whether the court decided the issue. Nevertheless, we conclude that the plaintiff has standing.

"The question of standing implicates a court's subject matter jurisdiction. . . . [A] court does not have subject matter jurisdiction over claims brought by persons who do not have standing . . . ." (Citation omitted; internal quotation marks omitted.) *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 90, 971 A.2d 1 (2009). "Although [i]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is the proper party to invoke judicial resolution of the dispute . . . [s]tanding requires no more than a colorable claim of injury . . . . A party ordinarily establishes . . . standing by *allegations* of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit . . . or is classically aggrieved. . . . Aggrievement is established *if there is a possibility*, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Portfolio Recovery Associates, LLC* v. *Healy*, 158 Conn. App. 113, 116, 118 A.3d 637 (2015).

"In order for a plaintiff to have standing, it must be a proper party to request adjudication of the issues. . . . Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. . . . One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative

capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Thus, to state these basic propositions another way, if the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so." (Citations omitted; internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001).

In its memorandum of decision, the trial court noted that, generally, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect. The court then stated that "the alleged harm suffered by the plaintiff was not caused by the defendant. Janney included the plaintiff as a third-party respondent in the arbitration, not the defendant. The harm, therefore, was neither directly nor indirectly addressed to the plaintiff by the defendant specifically." Notwithstanding this implicit determination that the plaintiff lacked standing to bring this action, the court proceeded to address the defendant's motion for summary judgment on the merits.[5]

The plaintiff alleged in her complaint that the settlement agreement prohibited the defendant from bringing an indirect claim against her related to the Janney account and that she suffered harm when the defendant brought such an indirect claim in the form of the arbitration proceedings against Janney and Janney sought indemnification from the plaintiff. The plaintiff further alleged in her complaint that, as a result of the arbitration proceedings, she incurred attorney's fees, costs,

[5] We need not address the effect of the court's irresolution as to the issue of standing because standing may be raised at any time, including sua sponte by the reviewing court. See, e.g., *Kloiber* v. *Jellen*, 207 Conn. App. 616, 621, 263 A.3d 952 (2021).

and expenses. Although the defendant brought the arbitration against Janney and Janney brought a third-party claim of indemnification against the plaintiff, the injury alleged in the complaint is grounded in allegations that the defendant himself breached the terms of the settlement agreement he had entered into with the plaintiff, breached the implied covenant of good faith and fair dealing in the settlement agreement, and engaged in vexatious litigation against the plaintiff. The allegations in the plaintiff's complaint set forth a colorable claim of injury establishing the possibility that her legally protected interests in the defendant abiding by the terms of the settlement agreement had been adversely affected. Accordingly, the plaintiff has standing.

## II

The plaintiff next claims that the court improperly determined that no genuine issues of material fact exist that the defendant, as a matter of law, did not breach the terms of the settlement agreement. Specifically, she contends that the court "disregarded the fact that the parties unambiguously released 'indirect' claims 'related to or concerning' the Janney account." We agree that the court improperly rendered summary judgment in the defendant's favor on the plaintiff's complaint.

We note the following additional relevant legal principles and standard of review. "A settlement is a legally enforceable agreement in which a claimant agrees not to seek recovery outside the agreement for specified injuries or claims from some or all of the persons who might be liable for those injuries or claims. . . . A release is an agreement to give up or discharge a claim. . . . A release acts like a contract . . . ." (Citations omitted; internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 427–28, 927 A.2d 843 (2007).

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the trial court's construction of a contract, we

must first ascertain whether the relevant language in the agreement is ambiguous. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . [When] there is definitive contract language, [however] the determination of what the parties intended by their contractual commitments is a question of law. . . . It is implicit in this rule that the determination as to whether contractual language is plain and unambiguous is itself a question of law subject to plenary review. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *C & H Shoreline, LLC* v. *Rubino*, 203 Conn. App. 351, 356–57, 248 A.3d 77 (2021).

Here, in concluding that the defendant was entitled to judgment in his favor, the court stated that "the settlement [agreement] signed by the plaintiff and the defendant unambiguously states that '[t]he Parties hereby acknowledge that the foregoing includes any claims against each other,' which the arbitration

between Janney and the defendant was not. . . . Janney, not the defendant, filed a third-party claim against the plaintiff." (Citation omitted; emphasis omitted.) Turning to the Janney/Bogda contract, the court stated: "The terms of the [Janney/Bogda contract] provide: 'If either Janney or your Financial Advisor is named a party to a lawsuit, or incurs legal costs associated with a dispute regarding ownership or beneficiary interests of your assets at Janney, you agree that Janney will, at its sole discretion, be indemnified for . . . those costs directly from assets held at Janney.' . . . The plaintiff, therefore, would be required to indemnify Janney if it were found liable or incurred legal costs in accordance with the terms of the [Janney/Bogda] contract, which it ultimately did not in this case." (Citation omitted; footnote omitted.) The court further reasoned that, because "the defendant was not a party to the [Janney/Bogda contract], he would not be bound by its terms and therefore would not have been involved in Janney's decision to [seek indemnification from] the plaintiff, consequently maintaining the terms of the settlement [agreement] between the defendant and the plaintiff."

Although the court emphasizes the unambiguousness of the phrase "[t]he Parties hereby acknowledge that the foregoing includes any claims against each other," there is significant additional language in the settlement agreement not analyzed by the court. That additional language defines the scope of the types of claims the parties are prohibited from bringing. See *Heyman Associates No. 5, L.P.* v. *FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 416, 102 A.3d 87 ("[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous" (internal quotation marks omitted)), cert. denied, 315 Conn. 901, 104 A.3d 106 (2014). Specifically, the settlement agreement provides that the plaintiff and the defendant release each other "from any and all manner of action

and actions, cause and causes of action . . . liabilities of every kind and character, direct and indirect, known and unknown, of whatever kind or nature . . . including but not limited to any claims related to or concerning the [Janney] account . . . ."

The plaintiff's argument focuses on the word "indirect" in the settlement agreement. The use of the term "indirect" denotes that the settlement agreement applies beyond direct actions and liabilities. Merriam-Webster's Collegiate Dictionary defines "indirect" as "deviating from a direct line or course : roundabout" and "not directly aimed at or achieved." Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) pp. 634–35. Cambridge Dictionary defines "indirect" as "happening in addition to an intended result, often in a way that is complicated or not obvious." Cambridge Dictionary, available at https://dictionary.cambridge.org/dictionary/english/indirect (last visited November 6, 2025). Oxford Learner's Dictionaries defines "indirect" as "happening not as the main aim, cause or result of a particular action, but in addition to it." Oxford Learner's Dictionaries, available at https://www.oxfordlearners-dictionaries.com/us/definition/english/indirect (last visited November 6, 2025). In sum, "indirect" means not direct, not obvious, not the main aim, and done in a roundabout way. See, e.g., *Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 784, 290 A.3d 801 (2023) (generally words in contracts are given their ordinary meaning); *Dejana* v. *Dejana*, 176 Conn. App. 104, 114–15, 168 A.3d 595 ("When construing a contract . . . the language used must be accorded its common, natural, and ordinary meaning and usage . . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.)), cert. denied, 327 Conn. 977, 174 A.3d 195 (2017). For example, "indirect" in the context of unjust enrichment has been described as

follows: "Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit." (Internal quotation marks omitted.) *Geriatrics, Inc.* v. *McGee*, 332 Conn. 1, 25, 208 A.3d 1197 (2019).

Although the plaintiff focuses on the single word "indirect" in the agreement, that term, read in context, is just one example of the types of claims covered in the broad scope of the settlement agreement. The expansive scope of the settlement agreement is found in the language providing that the parties release each other from "any and all manner of action . . . of every kind and character, direct and indirect . . . of whatever kind or nature . . . ." The parties' use of the broad words "any and all manner" and additional use of the expansive words "every kind and character . . . known and unknown, of whatever kind or nature" to modify, inter alia, the words "actions" and "liabilities" give those terms all-encompassing meanings. The use of such modifying terms denotes the broad scope of the settlement agreement, which we will not restrict in the absence of a clear limitation in the text. See *Salce* v. *Wolczek*, 314 Conn. 675, 686, 104 A.3d 694 (2014) ("parties' use of the word 'any' to modify the phrase 'ownership interest' in the first sentence of the contingency clause gives the resulting phrase an expansive meaning—one that we will not restrict in the absence of a clear limitation in the text"); see also *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 14, 938 A.2d 576 (2008) (use of word " 'any' " in phrase " 'any reason' " gives phrase broad and inclusive meaning); *Gary Excavating, Inc.* v. *North Haven*, 164 Conn. 119, 123, 318 A.2d 84 (1972) (words " '[a]ny disagreement' " are broad and all-embracing); *Connecticut Union of*

*Telephone Workers, Inc.* v. *Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646 (1961) (words " 'all claims' " are all-encompassing).

The expansive terms of the settlement agreement prohibiting the parties from bringing "any and all manner of action . . . of every kind and character, direct and indirect . . . of whatever kind or nature . . . including but not limited to any claims related to or concerning the [Janney] account," makes specific reference to the Janney account and to the 2020 action. Accordingly, it is clear from the express language of the settlement agreement that the parties' release of each other from such claims was of paramount purpose. Although Janney brought the third-party indemnification[6] claim against the plaintiff, that claim was dependent on and derivative of the defendant's arbitration action. The arbitration involved the Janney account and allegations similar to those raised in the 2020 action— that the plaintiff unduly influenced Uterstaedt to make her a joint owner of the Janney account. If both the defendant and Janney had prevailed in the arbitration, the result, in effect, would have been that the defendant gained and the plaintiff lost an amount equal to the portion of the money in the Janney account that the defendant had not received under the settlement agreement. Such an action was prohibited by the broad language of the settlement agreement in which the parties released each other from "any and all manner of action

---

[6] Indemnification generally involves two contracting parties and a third party, who is also implicated in a more roundabout way. "The logic and rationale underlying our indemnity case law are based on the premise that an action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party. . . . Specifically, the concept of indemnity usually involves an indemnitor, A, and an indemnitee, B, who enter into a contract whereby A agrees to indemnify B for any money B becomes legally obligated to pay to a third party." (Emphasis omitted.) *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 148–49, 810 A.2d 259 (2002).

. . . of every kind and character, direct and indirect . . . of whatever kind or nature" relating to the Janney account and the 2020 action.

Thus, the court incorrectly determined, as a matter of law, that the defendant's pursuit of the arbitration was not prohibited by the terms of the settlement agreement. There exist genuine issues of material fact as to the plaintiff's claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and vexatious litigation, which claims include allegations concerning what the defendant knew at the time of the arbitration and the nature of his intent. Consequently, the court improperly rendered summary judgment in favor of the defendant.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.