******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL KONOVER ET AL. *v.* MICHAEL
KOLAKOWSKI ET AL.
(AC 40173)
(AC 40434)

Lavine, Sheldon and Bishop, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendants for, inter alia,
breach of contract. The plaintiffs, K and four companies, had entered into
an agreement with the defendants, a group of individuals and companies,
including B Co., to purchase K's stock in B Co., of which K was the
sole director and shareholder. At the time of the agreement, B Co. was
a defendant in two groups of pending lawsuits, which led the parties
to include indemnification provisions in the purchase agreement regard-
ing the existing litigation involving B Co. Specifically, K promised to
indemnify B Co. and the defendants for damages resulting from any
judgment rendered against B Co. and the defendants in the existing
litigation. In return, K was given the exclusive right to manage the
existing litigation, and the defendants were required to cooperate with
K in the defense of the existing litigation and in any counterclaims or
new actions brought by K in connection with the existing litigation.
Thereafter, K demanded reimbursement from the defendants for legal
fees incurred during the course of defending the existing litigation.
Subsequently, the plaintiffs brought this action, alleging, inter alia,
breach of contract for B Co.'s refusal to reimburse K for legal fees
incurred during the existing litigation. Thereafter, the defendants filed a
counterclaim, alleging, inter alia, that K's mismanagement of the existing
litigation constituted a breach of contract and a breach of fiduciary
duty owed to them, and that they were not obligated, pursuant to the
agreement, to reimburse K for expenses incurred in conjunction with
the existing litigation. Subsequently, the trial court granted, in part, the
defendants' motion for summary judgment as to all claims pertaining
to breach of contract for the defendants' failure to pay attorney's fees
in the existing litigation, ruling that the agreement clearly and unambigu-
ously did not require B. Co. to reimburse K for legal fees incurred during
the course of the existing litigation. From the judgment rendered in part
thereon, the plaintiffs appealed to this court. *Held:*

1. The trial court properly rendered summary judgment in the defendants'
favor, as the language of the agreement clearly and unambiguously did
not obligate the defendants to reimburse K for legal fees incurred during
the existing litigation; the plain language of the agreement required K
to pay for legal fees incurred during the existing litigation and the
defendants to pay for their own legal fees should further claims be
brought against B Co., and it was devoid of any language that imposed
an affirmative obligation on the defendants to indemnify K for any legal
fees and, instead, placed an affirmative obligation on K to indemnify
the defendants for any judgment rendered for the named plaintiffs in
the existing litigation, and in the absence of any express language in
the agreement, this court would not impose such an obligation on
the defendants.

2. The plaintiffs could not prevail on their claim that even if the agreement
was clear and unambiguous, this court should look beyond the four
corners of the agreement to consider the meaning that the parties
ascribed to the indemnification provisions of the agreement by their
course of conduct, which was based on their claim that the defendants
should have been bound by certain judicial admissions in their pleadings
and prevented from now making a contrary argument: where, as here,
the contract language is clear and unambiguous, the intent of the parties
is a question of law, subject to plenary review, the contract is to be
given effect according to its terms and courts must look only to the
four corners of the contract to discern the parties' intent, and because
judicial admissions are knowing concessions of fact, which inform a
trier of fact but in no way bind the court in its independent, plenary
and judicial determination of applicable law, and the contract language

here was clear and unambiguous, the intent of the parties in utilizing the language in question was not binding on the court's legal determination of the import of the contract language, and this court declined to give deference to the erroneous construction of the agreement initially advanced by the defendants in their pleadings; moreover, even if there may be a circumstance in which extrinsic evidence may be referenced to glean the intent of the parties in their utilization of plain language, under the facts of this case, this court declined to stray from well reasoned jurisprudence that plain language should be accorded its plain meaning.

Argued September 25—officially released December 18, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the named defendant et al. filed a counterclaim; thereafter, the trial court, *Moukawsher*, *J.*, granted in part the motion for summary judgment filed by the named defendant et al. and rendered judgment in part thereon for the named defendant et al., from which the plaintiff Konover Development Corporation et al., appealed to this court; subsequently, following the granting of permission by this court, the named plaintiff filed a separate appeal with this court, which consolidated the appeals. *Affirmed.*

*Frank J. Silvestri, Jr.*, with whom were *Kristen G. Rossetti* and *Jeffrey R. Babbin*, for the appellants (plaintiffs).

*Richard J. Buturla*, with whom was *Ryan P. Driscoll*, for the appellees (defendants).

*Opinion*

BISHOP, J. This action arises from the indemnification provisions in a stock purchase and sales agreement (agreement) between the plaintiff Michael Konover[1] and the defendants Michael Kolakowski, Simon Etzel, and Eric Brown (the buyers)[2] for the buyers' purchase of Konover's stock in the KBE Building Corporation (KBE).[3] The plaintiffs appeal from the trial court's rendering of partial summary judgment in favor of the defendants. On appeal, the plaintiffs claim that the trial court erroneously ruled that the parties' agreement does not obligate the defendants to reimburse Konover for legal fees incurred while litigating certain legal actions that had been pending against Konover and KBE at the time the agreement was executed. In the alternative, the plaintiffs claim that, even if the language of the agreement does not require the defendants to reimburse Konover for any legal fees, the trial court should have considered admissions in the defendants' pleadings and other extrinsic evidence, which evinced an understanding between the parties that the defendants were responsible for paying their own legal fees incurred in conjunction with the referenced litigation. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to the resolution of this appeal. Konover was the sole director and shareholder of KBE. The buyers formed KBE Holdings, Inc., to acquire all of Konover's KBE stock. On March 30, 2007, the buyers and Konover executed the agreement at issue, which set forth the terms for the stock purchase and sale of all of Konover's stock.

At the time the agreement was executed, KBE was a defendant in two separate groups of civil actions, which the agreement referred to as the "Existing Litigation."[4] One group of actions, denominated the *Archambault* litigation, arose from personal injuries suffered by several construction workers, employed by a subcontractor of KBE, while building a BJ's Wholesale Club in Willimantic.[5] The second group of actions, referred to as the *Wells Fargo* litigation, stemmed from a foreclosure action in Maryland, in which Wells Fargo had obtained a judgment of foreclosure relating to a failed shopping center. In the *Wells Fargo* litigation, both Konover individually, and other entities related to him, had been named as defendants. KBE, however, had not been named as a defendant. After a final judgment was rendered in Maryland against both Konover in his individual capacity, as well as several other entities, the prevailing plaintiffs commenced an action against Konover and several entities owned by him, including KBE, seeking enforcement of the Maryland judgment in the United States District Court for the District of Connecticut.

Recognizing the possibility that KBE would need to satisfy potential judgments and would incur substantial legal fees as a result of the existing litigation, Konover and the buyers included indemnification provisions in the stock purchase and sales agreement. Pursuant to § 4.3 (b) (i) and (ii) of the agreement, Konover promised to indemnify KBE and the buyers for "Damages" resulting from "any judgment" rendered against KBE or the buyers in the existing litigation. In exchange, Konover was given the exclusive right to manage the existing litigation, and the defendants were required to cooperate with Konover in the defense of the existing litigation. The defendants were obligated, as well, to cooperate with Konover in any counterclaims or new actions brought by Konover against any parties to the existing litigation. These potential actions were referred to as "Successor Actions" in the parties' agreement.[6] Section 4.4 further provided, however, that Konover was responsible for the cost of any successor actions.

During the course of the existing litigation, the defendants became discontent with Konover's management of the litigation. Also, Konover demanded reimbursement from the defendants for legal fees incurred during the course of defending these matters.[7] Unable to resolve these disagreements, Konover and the plaintiffs filed a twelve count complaint against the defendants, alleging, inter alia, breach of contract for KBE's refusal to reimburse Konover for legal fees he incurred during the existing litigation. In turn, the defendants filed a counterclaim, alleging, inter alia, that Konover's mismanagement of the litigation constituted a breach of contract and a breach of fiduciary duty owed to them. The defendants also claimed, in response to the complaint, that they were not obligated pursuant to the agreement to reimburse Konover for expenses he incurred in conjunction with the existing litigation. The defendants subsequently filed a motion for summary judgment on the same basis.

After briefing and argument, the trial court granted the motion for summary judgment on all claims pertaining to breach of contract for failure to pay attorney's fees in the existing litigation, ruling that the agreement clearly and unambiguously did not require KBE to reimburse Konover for legal fees incurred during the course of the existing litigation, and only required the defendants to pay legal fees for any future claims brought by the *Archambault* or *Wells Fargo* plaintiffs. Specifically, the court ordered: "Summary judgment is granted on all claims premised on breach of a contract to pay attorneys' fees in the existing litigation in favor of the defendants that moved for summary judgment. . . . Because all counts of the current complaint are through incorporation by reference premised on the existence of the contract obligation rejected in this opinion, the plaintiffs may have [thirty] days leave to file a new

complaint if they believe they can state causes of action without the contract based premise that KBE promised to pay fees in existing litigation." The trial court's ruling disposed of all claims made by Konover Development Corporation, Konover and Associates, Inc., Blackboard, LLC, and Ripple, LLC. These entities subsequently filed an appeal as a matter of right. The trial court's ruling did not, however, dispose of all claims made by Konover in the complaint. As a result, Konover sought and was granted permission from the trial court, *Moukasher, J.*, and this court to appeal, pursuant to Practice Book § 61-4. In a separate motion, this court consolidated the appeals. Additional facts will be set forth as necessary.

At the outset, we note the applicable standard of review and legal principles relating to motions for summary judgment. "Summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. A fact is material when it will make a difference in the outcome of a case." (Internal quotations omitted.) *McFarline* v. *Mickens*, 177 Conn. App. 83, 90, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018). "Appellate review of the trial court's decision to grant summary judgment is plenary." Id. "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." *Lopes* v. *Farmer*, 286 Conn. 384, 388, 944 A.2d 921 (2008).

I

We begin with the plaintiffs' claim that the trial court erroneously determined that the agreement clearly and unambiguously did not obligate the defendants to reimburse Konover for any legal fees incurred during the existing litigation. The plaintiffs assert that the provisions of the agreement, read in the context of the entire agreement, unambiguously require the defendants to pay for their own legal fees in the existing litigation. As a result, the defendants must reimburse Konover for legal fees that he advanced during the course of the existing litigation. In support of this argument, the plaintiffs urge this court to read § 4.3 (b) (i) and (ii) of the agreement to exclude KBE's attorney's fees in the existing litigation from Konover's indemnification obligation. We are not persuaded.

We first set forth the standard of review and legal principles that guide our analysis. "The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo." (Internal quotation marks omitted.) *Meridian Partners, LLC* v. *Dragone Classic Motorcars, Inc.*, 171 Conn. App. 355, 364, 157 A.3d 87 (2017). "A contract is unambiguous when its language is clear and conveys

a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 323–24, 186 A.3d 771, cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018).

Section 4.3 (b) (i) and (ii) are provisions that detail Konover's indemnification obligations to the defendants regarding both the existing litigation and any further actions. These sections state, in relevant part: "The indemnification for Damages by [Konover] as it relates to the [existing litigation], inclusive, shall be limited to [Konover's] obligation to satisfy any judgment in favor of the named plaintiff against [the defendants] pursuant to such actions, and specifically excludes the cost of [the defendants'] legal fees as well as the costs or expenses incurred by the [defendants] as a result of any further claims brought by the plaintiffs in such actions against [the defendants] . . . ." The term "judgment" is defined in § 4.3 (b) (iii) to include "actual Damages assessed against [the defendants] . . . and in every instance, shall expressly exclude and be limited by those matters otherwise specifically set forth above in [§ 4.3 (b) (i) and (ii)] . . . ." Additionally, the term "Damages" is defined in § 4.6 to include "fees and reasonable expenses of attorneys."

The plaintiffs assert that this language clearly and unambiguously requires the defendants to reimburse Konover for legal fees incurred in conjunction with the existing litigation. It does not. The plaintiffs' construction of § 4.3 (b) (i) and (ii) requires the use of the language "as well as" to serve as a buffer between "cost of [the defendants'] legal fees" and "further claims." Put differently, the plaintiffs argue that the phrase "as well as" must be construed to exclude the "cost of [the defendants'] legal fees" from "further claims," and must instead be attributed to the cost of legal fees for the existing litigation. This interpretation tortures the words of the agreement to conform to the will of the plaintiffs. The words "as well as" are commonly used as an inclusive, connecting phrase, rather than a dividing one.[8] Here, "as well as" plainly includes the cost of

the defendants' legal fees in the category of expenses specifically excluded from Konover's indemnification obligations for *further claims*. In other words, the plain language of the contract requires Konover to pay for legal fees incurred during the existing litigation, but the defendants must pay for their own legal fees should further claims be brought against KBE.[9] This reading of § 4.3 (b) (i) and (ii) is supported when construing the language of the agreement as a whole.

Under § 4.4 of the agreement, Konover had the exclusive authority to manage the existing litigation. Further, he was obligated to satisfy any judgment against the defendants in the existing litigation under § 4.3 (b) (i) and (ii). If this court were to accept the plaintiffs' reading of the agreement, and §§ 4.3 and 4.4 in particular, Konover could effectively use his managerial authority to incur an open ended amount of legal expenses, at the defendants' expense, to defend against a judgment that he alone would be obligated to satisfy. As the trial court aptly observed in rendering summary judgment in favor of the defendants: "There is no way to convert any language limiting what Konover must do into language requiring KBE to do something that would be extraordinary and was not mentioned in the contract: assume an affirmative obligation to pay an unlimited amount of attorneys' fees to defend against claims that ultimately Konover alone might have to pay. Indeed, such an interpretation is not only disconnected from any language in the contract but is made absurd by the contract provision that gives Konover the sole right to manage the litigation—including how much is spent defending it and for how long. With someone else's millions for defense, Konover would have precious little incentive to pay even a penny for tribute regardless [of] whether it would make the cases go away entirely."

Our courts refuse to "construe a contract's language in such a way that it would lead to an absurd result." *Welch* v. *Stonybrook Gardens Cooperative, Inc.*, 158 Conn. App. 185, 198, 118 A.3d 675, cert. denied, 318 Conn. 905, 122 A.3d 634 (2015).

The plaintiffs also argue that the trial court's reading of § 4.3 (b) (i) and (ii) renders the word "costs" superfluous because the manner in which the court interpreted the agreement would exclude both the *cost* of KBE's legal fees and the *costs* incurred by the buyers as a result of further claims. In other words, the plaintiffs argue that the words "cost" and "costs" are synonymous and, thus, cannot both be understood to apply to "future claims" without being duplicative. We disagree.

The plaintiffs would have the court interchange the term "cost" and "costs" in its construction. These words, however, commonly have different meanings. "We often consult dictionaries in interpreting contracts . . . to determine whether the ordinary meanings of the words used therein are plain and unambiguous, or

conversely, have varying definitions in common parlance." (Internal quotation marks omitted.) *NPC Offices, LLC* v. *Kowaleski*, 320 Conn. 519, 528, 131 A.3d 1144 (2016). The word "cost" is often defined as the "amount paid or charged for something." Black's Law Dictionary (9th Ed. 2009). Conversely, the word "costs" commonly refers to "charges or fees taxed by a court" or "expenses of litigation, prosecution, or other legal transaction, [especially] those allowed in favor of one party against the other." Id., 398. "[T]he term costs is a term of art having a limited, well-defined legal meaning as statutory allowances to a prevailing party in a judicial action in order to reimburse him or her for expenses incurred in prosecuting or defending the proceeding." (Internal quotation marks omitted.) *Yeager* v. *Alvarez*, 134 Conn. App. 112, 121, 38 A.3d 1224 (2012). Consequently, the ordinary reading of § 4.3 (b) (i) and (ii) would exclude from Konover's indemnification obligation the cost (sum or amount charged) of KBE's attorney's fees and the costs (statutory allowances of the prevailing party) or expense incurred by KBE as a result of future claims, but not the existing litigation.

As noted by the trial court, the stock purchase agreement is devoid of any language that imposes an affirmative obligation on the defendants to indemnify Konover for any legal fees incurred during the existing litigation. Rather, the agreement squarely places an affirmative obligation on Konover to indemnify the defendants for any judgment rendered for the named plaintiffs in the existing litigation. We decline to impose such an obligation on the defendants in the absence of any express language in the agreement. "[A] court cannot import into the agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms." *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 781–82, 905 A.2d 623 (2006).

We conclude that the language of the agreement is clear and unambiguous; the defendants are not obligated to reimburse Konover for legal fees incurred during the existing litigation. Accordingly, we conclude that the court properly rendered summary judgment in the defendants' favor.

## II

The plaintiffs next claim that even if the agreement is clear and unambiguous, we should look beyond the four corners of the agreement to consider the meaning the parties ascribed to the indemnification provisions of the agreement by their course of conduct. We reject this invitation to error.

The following additional facts are pertinent to the plaintiffs' claim. The defendants initially took the position in their counterclaim and memorandum in support of their motion for summary judgment that KBE was

required to pay for its own legal fees in the existing litigation. At oral argument on the defendants' motion for summary judgment, the trial court opined that the agreement was clear and unambiguous, and did not obligate the defendants to indemnify Konover for legal fees incurred during the existing litigation. Consequently, after oral argument, the defendants adopted the trial court's interpretation of the agreement in their supplemental memorandum of law in support of their motion for summary judgment. Conversely, the plaintiffs argued that the trial court's reading of the contract was inconsistent with the intent of the parties.

As a preliminary matter, the plaintiffs urge the court to look to the admissions in the defendants' pleadings to discern the parties' understanding of the contract language. In essence, Konover asserts that the defendants should be bound by their judicial admissions and, therefore, they should be prevented from now making a contrary argument. "Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings. . . ." *Kopacz* v. *Day Kimball Hospital of Windham County, Inc.*, 64 Conn App. 263, 272, 779 A.2d 862 (2001). "Admissions, whether judicial or evidentiary, are concessions of fact, not concessions of law." *Borrelli* v. *Zoning Board of Appeals*, 106 Conn. App. 266, 271, 941 A.2d 966 (2008). "[C]oncessions of fact inform the trier of the fact, court or jury, but they in no way bind the court in its independent, plenary, and judicial determination of the applicable law." C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 8.16.3 (a), p. 529. The issue at hand is a question of law and not fact. Because we hold that the language of the contract is clear and unambiguous, the intent of the parties in utilizing the language in question is not binding on the court's legal determination of the import of the contract language. Accordingly, the trial court and we, on review, decline to give deference to the erroneous construction of the agreement initially advanced by the defendants in their pleadings.

"If the language of a contract is clear and unambiguous, the intent of the parties is a question of law, subject to plenary review." *Schimenti* v. *Schimenti*, 181 Conn. App. 385, 396, 186 A.3d 739 (2018). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Awdziewicz* v. *Meriden*, 317 Conn. 122, 129–30, 115 A.3d 1084 (2015). "When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180, 972 A.2d 228 (2009); accord *Dejana* v. *Dejana*, 176 Conn. App. 104, 115, 168 A.3d 595, cert. denied, 327 Conn. 977, 174 A.3d 195 (2017). "[E]xtrinsic evidence may be considered in determining contractual intent only if a contract is ambiguous." (Internal quotation marks omitted.) *Orange Palladium,*

*LLC* v. *Readey*, 144 Conn. App. 283, 297, 72 A.3d 1191 (2013). "When the intention conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction." (Internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 278, 654 A.2d 737 (1995). "The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used." (Internal quotation marks omitted.) Id., 279. In sum, decisional law holds that if the language of the contract is clear and unambiguous, our courts must look only to the four corners of the contract to discern the parties' intent.

The plaintiffs rely on *Sims* v. *Honda Motor Co., Ltd.*, 225 Conn. 401, 623 A.2d 995 (1993), to support the proposition that our courts do not strictly adhere to the four corners rule in all circumstances. We find *Sims*, however, to be inapplicable to the current case. In *Sims*, our Supreme Court recognized that its holding, which enabled the court to look beyond the four corners of a contract, even if the language was clear and unambiguous, was limited to the application of General Statutes §52-572e, which relates to general releases.[10] For additional support, Konover cites to numerous treatises and Justice Berdon's dissenting opinion in *Levine* v. *Massey*, supra, 232 Conn. 284, for the proposition that, under the appropriate circumstances, a court may look beyond the plain language of a contract to glean the intention of the parties to the agreement. We do not find these authorities determinative of the issue we confront.

In *Levine*, supra, 232 Conn. 280–83, our Supreme Court strictly adhered to the four corners approach to contract interpretation, holding that the plain language of the contract was clear and unambiguous and did not entitle the defendant to royalty payments for a new medical device invented by one of the plaintiffs. In his dissent, Justice Berdon rejected the four corners approach as a constant limitation to analysis and instead advocated for the use of extrinsic evidence in all instances to determine the parties' intent. Id., 286–87 (*Berdon, J.*, dissenting). Similarly, Justice Berdon relied on numerous treatises to support the proposition that language is inherently ambiguous and that a court must not ascribe a meaning to a contract outside the contemplation of the parties.[11] Id., 287.

Even if there may be a circumstance in which extrinsic evidence may be referenced to glean the intent of the parties in their utilization of plain language, we are unwilling, in this instance, to stray from our well reasoned jurisprudence that plain language should be accorded its plain meaning.

Accordingly, we reject the plaintiffs' argument that this court should embrace a more modern theory of

contract interpretation that looks outside the four corners of the contract to discern the intention of the parties irrespective of whether the contract is ambiguous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Additional plaintiffs in this appeal include Konover Development Corporation, Konover & Associates, Inc., Blackboard, LLC, and Ripple, LLC. For clarity, we refer to Michael Konover individually as Konover, and the parties associated with him collectively as the plaintiffs.

[2] Additional defendants in this appeal include KBE Building Corporation, KBE Holdings, Inc., Konover Construction Corporation South, Sturdy Fence Corp., Elite Construction Rentals, LLC, and Conn-struction, LLC. For clarity, we refer to the defendants individually by name and collectively as the defendants.

[3] The company was named Konover Construction Company before its sale to the buyers. For simplicity, we refer to the entity as KBE even when the events described occurred prior to KBE's renaming.

[4] For clarity, we also refer to these lawsuits collectively as the existing litigation.

[5] The *Archambault* litigation also included issues relating to insurance coverage.

[6] Section 4.4 of the agreement states, in relevant part: "As to the indemnifications set forth in [§] 4.3 [of the agreement] with respect to the Existing Litigation and the Successor Actions (as hereinafter defined) . . . [Konover] shall have and retain the sole right to manage the litigation, including without limitation, the settlement thereof or the right to prosecute appeals with respect to any judgment arising thereunder . . . . [The defendants] shall, at no cost to [Konover], cooperate in good faith with reasonable diligence to assist [Konover] in connection with the defense of the Existing Litigation and the prosecution, as the case may be, upon request of [Konover] in the name of any of the Companies, of counter-claims and/or new litigation against any party . . . . [Konover] will pay the cost of any such Successor Actions (including reasonable legal fees of the Companies) . . . ."

[7] Specifically, in the *Archambault* litigation, the defendants objected to Konover's decision to retain Attorney Wesley Horton to supplement KBE's existing appellate defense counsel, alleging that they were unaware that Horton had been retained until after Konover sought reimbursement. Moreover, in the *Wells Fargo* litigation, the defendants claimed that Konover failed to settle claims involving KBE so that funds from a director and officer insurance policy could instead be used for his personal defense. The plaintiff sought to compel KBE to pay its fair share of legal fees, which he calculated by evenly apportioning legal fees incurred by all defendants in the litigation.

[8] "As well as" is commonly understood to mean "and in addition [to]" or "and also." See Merriam-Webster Collegiate Dictionary (11th Ed. 2003); Ballentine's Law Dictionary (3rd Ed. 1969).

[9] In the alternative, the plaintiffs argue that the reading of the connecting phrase is, at a minimum, ambiguous, "creating a factual issue of interpretation that precludes summary judgment for the defendants." An ambiguity, however, "must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Bassford* v. *Bassford*, 180 Conn. App. 331, 348, 183 A.3d 680 (2018).

[10] In *Sims*, our Supreme Court stated: "We recognize that our conclusion is a departure from the general rule of contract construction that unambiguous contract provisions are to be given their plain meaning without reference to evidence outside the four corners of the agreement. . . . Rigid application of that general rule would, however, frustrate the purposes of [General Statutes] § 52-572e, which counsels against uncritical enforcement of boilerplate general release language and, therefore, justifies treating such language differently from how we treat other contractual provisions. Accordingly, we hold that, in light of the purposes of § 52-572e, general releases like that executed by Sims are not subject to that traditional rule of contract construction." Id., 415.

[11] Specifically, Justice Berdon stated, in relevant part: "[W]hile it is true that under the 'four corners' doctrine, a court may not consider any extrinsic evidence unless a contract is ambiguous, the more modern view, propounded by Professors Corbin and Farnsworth, recognizes that 'the meaning of lan-

guage may vary greatly according to the circumstances' and that 'all language is infected with ambiguity and vagueness and that even language that seems on its face to have only one possible meaning may take on a different meaning when all the circumstances are disclosed . . . .' 2 E. Farnsworth, Contracts (1990) § 7.12, pp. 277–78. Under this theory, extrinsic evidence is always available to be used for interpreting the intent of the parties. Id., p. 272. After all, as Professor Corbin observed, '[n]o contract should ever be interpreted and enforced with a meaning that neither party gave it.' 3 A. Corbin, Contracts (Sup.1994) § 572B, p. 443 . . . . " *Levine* v. *Massey*, supra, 232 Conn. 286–87 (*Berdon*, *J.*, dissenting).

---