******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## PETER J. SCOTT *v.* KYU SCOTT
### (AC 44304)

Prescott, Elgo and Suarez, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court denying her motion for contempt. The defendant had alleged that the plaintiff wilfully refused to comply with several financial orders in the parties' separation agreement, which was incorporated into the dissolution judgment, by failing to reimburse her for certain expenses she unilaterally incurred on behalf of the couple's minor children, including, inter alia, $5775 for dental surgery, $51,500 for the cost of a private college coach and $9000 for an automobile, as well as the significant cost of a twenty-two day enrichment program in Jackson, Wyoming. The trial court concluded that the plaintiff's actions did not rise to the level of contempt. It determined that the separation agreement was ambiguous as to the date on which certain of the parties' financial obligations were to commence and that the defendant sought reimbursement for items that either were not covered by the agreement or for which she had not obtained the plaintiff's consent, as required under the agreement. The court further concluded that certain of the defendant's expenditures were extravagant and unnecessary and that she had not acted in good faith under the agreement. On appeal, the defendant claimed, inter alia, that the trial court improperly rewrote the separation agreement, thereby denying her reimbursement from the plaintiff, and improperly awarded him attorney's fees pursuant to the statute (§ 46b-87) applicable to contempt proceedings. *Held*:

1. The trial court did not err in denying the defendant's motion for contempt, as the separation agreement was ambiguous regarding the date on which the plaintiff was to commence paying the children's tuition as well as certain other financial obligations; although the agreement contained a definitive commencement date for the plaintiff's payment to the defendant of unallocated alimony and child support, it did not provide a start date for the payment of the children's expenses, and, as there were two reasonable interpretations of the commencement dates, those portions of the agreement did not constitute clear and unambiguous orders of the court.

2. The defendant's claim that the trial court modified the separation agreement's child support order such that the plaintiff was not required to pay for certain of the children's expenses was unavailing, as the court's findings that the plaintiff was not required to reimburse the defendant for the cost of the automobile she bought for the children, as well the costs for the private college coach and the enrichment program, were not clearly erroneous: although the provision of the agreement pertaining to the car was ambiguous, the court determined, after considering all of the evidence, that the parties did not intend the agreement to cover the cost of an automobile but, rather, the expenses for a child to obtain a license to drive an automobile as well as related expenses such as fuel, maintenance, insurance or driving lessons; moreover, the court's finding that the defendant's conduct did not comport with an implicit duty of good faith was supported by the record, as the enrichment program was more akin to a vacation for the defendant and the children than an extracurricular activity for the children, and the expenditure for the private college coach was extravagant and unnecessary in light of the fact that college counseling was part of the tuition package at the children's boarding school; furthermore, the plain and unambiguous meaning of the separation agreement did not obligate the plaintiff to reimburse the defendant for the hundreds of lower monetary value expenses she itemized that could not be considered extracurricular or related to organized activities within the meaning of the agreement.

3. The trial court did not abuse its discretion when it did not enter orders requiring the plaintiff to reimburse the defendant for children's expenses that she unilaterally incurred, the court having properly concluded that

those expenses were either not covered under the agreement or were not made in good faith.

4. The trial court did not err in determining that the defendant was not entitled to full reimbursement from the plaintiff for the cost of the children's dental procedures: contrary to the defendant's assertion, the court's factual findings with respect to those procedures were not clearly erroneous but were supported by evidence that the plaintiff arranged for the procedure to be done by an in-network dentist and agreed to share the cost with the defendant, as was his prerogative under the separation agreement, but that the defendant insisted that the procedures be done by an out-of-network oral surgeon because it was an emergency; moreover, because the plaintiff did not agree to have the procedure performed by the out-of-network dentist and the defendant did not offer any credible evidence as to the nature of the procedure or the necessity that it be performed quickly and by a particular oral surgeon, she was required under the agreement to obtain the plaintiff's consent for the procedure; accordingly, the court properly concluded that the defendant was entitled under the separation agreement to reimbursement for 60 percent of the cost of the procedures performed by an in-network dentist or oral surgeon.

5. The trial court did not abuse its discretion in awarding the plaintiff attorney's fees, as § 46b-87 permits the award of such fees to the prevailing party in a contempt proceeding: the plaintiff's actions did not rise to the level of wilful contempt, whereas the defendant did not exercise good faith and good judgment in making arbitrary and unilateral expenditures that were based on a strict reading of the separation agreement; moreover, the court properly considered the defendant's behavior, as an award of attorney's fees under § 46b-87 is punitive, rather than compensatory, and, contrary to the defendant's contention, the court's ability to award the plaintiff attorney's fees was not impacted by its order that the plaintiff reimburse her for certain tuition costs, as a trial court has broad discretion to make a party whole, even in the absence of a finding of contempt, as well as the authority under its equitable powers to fashion an order designed to protect the integrity of the dissolution judgment.

Argued January 13—officially released September 6, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Michael E. Shay*, judge trial referee, denied the defendant's motion for contempt, entered certain financial orders, and awarded attorney's fees to the plaintiff, and the defendant appealed to this court. *Affirmed.*

*Samuel V. Schoonmaker IV*, for the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. This appeal stems from postdissolution proceedings in which the defendant, Kyu Scott, moved that the plaintiff, Peter J. Scott, be found in contempt by virtue of his breach of several provisions of the separation agreement (agreement) that was entered into by the parties and incorporated into the judgment dissolving their marriage. On appeal, the defendant claims that the court improperly (1) denied her motion for contempt, (2) rewrote the agreement and retroactively modified a child support order, (3) failed to find an arrearage and enter orders necessary to preserve the integrity of the agreement, (4) determined that the defendant was not entitled to reimbursement for the cost of an out-of-network oral surgeon, and (5) ordered the defendant to pay attorney's fees to the plaintiff. We affirm the judgment of the trial court.

The following facts, as found by the court or as undisputed in the record, and procedural history are relevant to this appeal. The marriage of the plaintiff and the defendant was dissolved on March 4, 2015. Prior to the dissolution, the plaintiff and the defendant entered into the agreement, which was approved by the court and incorporated by reference into the dissolution decree. The agreement provides for the joint legal and physical custody of the parties' two children.

The agreement also included an award of unallocated alimony and child support. Specifically, article 3.1 requires the plaintiff, beginning on January 1, 2015, to pay to the defendant a percentage based "unallocated alimony and child support until the death of either party, the [defendant's] remarriage, prior to the minor children's high school graduation or the completion of four . . . years of high school, or her cohabitation as defined in . . . General Statutes § 46b-86 (b), or for a non-modifiable term of seven . . . years . . . ." "Commencing the first day of September following the minor children's high school graduation or the completion of four . . . years of high school," article 3.2 requires the plaintiff to pay unallocated alimony and child support at a lower percentage based rate. The agreement provides that the unallocated alimony and child support payments terminate at the end of year seven on December 31, 2022, if not sooner for one of the specified reasons.

Article V, which is titled "Pre-College Children's Expenses," provides for the payment of the children's expenses while they attend boarding school. Article 5.1[1] requires the plaintiff to pay 60 percent and the defendant to pay 40 percent of the unreimbursed or uninsured medical and dental expenses of the children. Article 5.2[2] requires the plaintiff to pay 60 percent and the defendant to pay 40 percent of the cost of boarding or private school. Article 5.3[3] requires the plaintiff to pay 60 percent and the defendant to pay 40 percent of

the children's "[e]xtracurricular, [o]rganized [a]ctivities and [o]ther [e]xpenses . . . ." Articles 5.1, 5.2 and 5.3 each provide that the plaintiff must pay 100 percent of the children's expenses "[i]n year five" if the children are still attending boarding school. Article 5.4[4] requires the plaintiff to reimburse the defendant for article 5.3 expenses that she pays within one month of the defendant's request for payment.

Article 3.5[5] provides that if the alimony support obligation terminates, "then the parties shall determine the amount of child support to be paid by the [plaintiff] to the [defendant] retroactive to the date alimony ended." The defendant remarried on May 4, 2018. At that time, the alimony portion of the award terminated, and the plaintiff made no further alimony payments to the defendant. Thereafter, despite the fact that article 3.5 of the agreement requires the plaintiff and the defendant to "determine the amount of child support to be paid by the [plaintiff] to the [defendant] retroactive to the date alimony ended," neither the plaintiff nor the defendant took any steps to have the court determine an appropriate child support order pursuant to General Statutes §§ 46b-84[6] and 46b-86.[7]

On June 19, 2018, the defendant filed a motion for contempt, alleging that the plaintiff was not complying with several financial orders contained in the agreement. Specifically, the defendant claimed that the plaintiff "wilfully and deliberately failed and refused to comply with the court's order concerning his agreement to pay for the children's expenses, including unreimbursed medical and dental expenses, boarding or private school, college coach, car insurance, extracurricular, organized activities and other expenses." In her motion, the defendant asked the court to find the plaintiff in contempt, enter an order requiring the plaintiff to comply with the portions of the agreement regarding the children's expenses, and award her attorney's fees. In response, the plaintiff filed a motion for attorney's fees asking that he "be awarded . . . reasonable counsel fees and costs incurred in defending against the baseless claim of contempt, pursuant to . . . General Statutes [§] 46b-87."

The court conducted an evidentiary hearing on the motion on December 4 and 6, 2019. On February 4, 2020, the court issued a memorandum of decision on the defendant's motion for contempt. The court began by noting that the "first task of the court is to determine if the order on which the claim is based is clear and unambiguous. In this matter, during final argument, counsel for the [defendant] observed that the agreement itself is, 'hardly a road map of clarity.' The court agrees. The initial confusion stems from the meaning of 'those three little words,' to wit: 'In year five.' They or a variant of them appear in both articles III and V of the agreement.

"Under article 3.5 of the agreement, the parties were obligated to calculate the appropriate amount of child support retroactive to the date that the alimony ended, and they have not done so as of the date of the hearing. On the other hand, what they have done is come to an informal arrangement or, more accurately, a large misunderstanding regarding the scope of article 5.3, whereby each party makes general expenditures on behalf of the children, tallies them all up, and sends the sum total to the other party for a monetary adjustment in favor of one or the other. The parties agreed by stipulation . . . in January, 2018, that their accounts were square as of the end of 2017.

"That informal arrangement notwithstanding, the biggest problem with the arrangement is that it is not a clear and unambiguous order of the court, and, hence, a failure to comply is not a breach and does not result in a finding of contempt.[8] Second, and perhaps more problematic, is the fact that the [defendant] has blurred the lines, in her claim, merging, for example, the children's snacks, allowance, haircuts, and clothing, to name just a few items that are clearly not 'extracurricular,' with some items that arguably fall into that category and are covered by the agreement, and, as a result, could be the subject of a motion for contempt. The tuition at Choate Rosemary Hall [boarding school] would be a good example. Last, the specific items that she has claimed, while they may be within the 'black letter' of the agreement, were made unilaterally, without the agreement of the [plaintiff], were either unnecessary or an unusually large expenditure (e.g., 'college coach') and, hence, were not made in good faith. Accordingly, the [defendant] should be fully responsible for the cost of the college coach, the car purchased for the children and the enrichment experience in Jackson, Wyoming. The [plaintiff's] liability for the dental surgery should be limited to 60 [percent] of the cost of the procedure performed by the in-network dentist or oral surgeon.[9]" (Citation omitted; emphasis omitted; footnote in original.)

The court found that the use of the words "[i]n year five" in article V of the agreement was ambiguous. The court determined that, "[l]ooking at the plain meaning of the words, there are two logical ways to interpret what was intended to be the commencement date for the operative financial obligations set forth in the agreement, that is: (a) from and including March 4, 2015, the date of the agreement itself, or (b) retroactively from and including January 1, 2015. It is clear from a reading of article 3.1 that the [plaintiff's] alimony obligation commenced on January 1, 2015. It is also clear that the parties did not intend that there be a gap in coverage for the children's unreimbursed medical expenses as set forth in article 5.1. Accordingly, the court finds that the agreement is ambiguous as to this issue. However,

looking at the agreement as a whole, the court finds that a start date of January 1, 2015, would be more consistent with the intent of the parties and more likely to carry its terms and provisions of same into effect."

On the basis of these findings, the court later concluded that, "under all the circumstances, the relevant provisions of the agreement in question are ambiguous, and the [plaintiff's] actions do not rise to the level of contempt; and that, however, notwithstanding a finding of no contempt, as to the private school expenses, the intent of the parties was to use the calendar year and not the designated school year (i.e., freshman, sophomore, etc.) as a basis for determining the respective responsibilities of the parties based upon the following considerations: (a) at the time that the clause was drafted, both children were attending public school; (b) the decision to have the children repeat [ninth] grade was mutual and arrived at after the agreement was drafted; and (c) the phrase in question is repeated in the clauses related to the children's activities and unreimbursed medical expenses; that the children's senior year at Choate Rosemary Hall is the '[fifth] year' [that] was contemplated by the parties; and that the [plaintiff's] obligation is 100 [percent] thereof."

As to the unreimbursed medical and dental expenses, the court made several findings of fact and conclusions, stating that "[t]he parties do not appear to have a dispute as to the application of their respective shares of these expenses but, rather, to specific expenditures. For instance, the [defendant] seeks 100 [percent] reimbursement from the [plaintiff] for a dental procedure for the children. The [plaintiff] had made long-standing arrangements for the procedure to be done by an in-network dentist, and, at the last minute, the [defendant] arbitrarily changed to an out-of-network oral surgeon, claiming that it was an emergency. The dental surgeon's bill was $5775. . . . The [defendant] did not offer any credible evidence or expert testimony as to the nature of the procedure and much less the necessity that it be performed quickly and by whom. Under all the circumstances, it would be unfair to make the [plaintiff] bear the entire cost over and above the normal charges that he had already made arrangements to have done." (Citation omitted.)

With respect to the private school tuition, the court made the following findings of fact and conclusions: "At the time of the dissolution, the children were both attending Eastern Middle School, a public school in Greenwich. A mutual decision was reached later, while the children were still students at Greenwich High School, to send them to Choate Rosemary Hall as boarding students, where they would repeat [ninth] grade. It is important to note that the parties could have, but did not, [specify] that this provision applied to the traditional, specific academic years (i.e., freshman, sopho-

more, etc.), as they did do in article 3.1 relating to the termination of alimony. Rather, they used the generic description, 'years one through four.' The [plaintiff's] contention, however, is just that. In essence, notwithstanding the repetition of the freshman year, he claims he has no further obligation, and would only have one, should there be a specific [fifth] academic year. According to the testimony of the [defendant], Choate Rosemary Hall has no term beyond senior year. While there is some logic to the [plaintiff's] interpretation, the better, more logical explanation is that the children are currently in 'year five' and that his obligation under the terms of the agreement is 100 [percent] of the tuition, room and board at Choate Rosemary Hall."

The court also made several findings of fact and conclusions with respect to the disputed expenses paid by the defendant on behalf of the children, specifically, the college coach, the enrichment experience, and the automobile. The court found that, "[i]n years one through four, such expenditures are to be made during their school years, 60 [percent] by the [plaintiff] and 40 [percent] by the [defendant]. However, in year five, in the event that the children are attending boarding school, the [plaintiff] pays 100 [percent]. The [defendant] has offered to the court several exhibits outlining her out-of-pocket expenditure on behalf of the children; the list is very comprehensive, detailing even the smallest, inconsequential items [such] that the court questions her good faith and perspective. In particular, she has made arbitrary expenditures based upon a strict reading of the agreement. As a case in point, the [defendant] made a unilateral decision to use a firm called Preminente as a college coach for the twins, and, to that end, she has expended or committed to expend $51,500 . . . . While the agreement specifically uses the term 'college coaches,' the testimonial evidence is clear that Choate Rosemary Hall had college counselors on staff as part of the tuition package. The court finds under all the circumstances that her expenditure and commitment to pay same to be extravagant and unnecessary. Likewise, the [defendant] unilaterally selected an expensive, [twenty-two] day 'enrichment program' at Jackson, Wyoming, through the Grand Teton National Park Foundation that was more akin to a family vacation. Similarly, the [defendant] unilaterally purchased a used car for a net of $9000 . . . for the children on the strength of a patently ambiguous clause, drafted ostensibly to cover 'expenses for a child to obtain and hold a license to drive an automobile.' A parenthetical listing, by way of example, includes 'car insurance, cars and related fuel and maintenance.' Clearly, one does not have to own or lease a car in order to obtain and maintain a driver's license, and a logical explanation would be that it was intended to cover the fuel and maintenance of a vehicle, as with other expenses related to driving a car such as 'car insurance' or driving

lessons. There does not appear to be a mechanism in the agreement to resolve such disagreements but, rather, it relies upon the good faith and good judgment of each of the parties, something the [defendant] has clearly not exercised." (Citations omitted.) On the basis of these facts, the court ultimately concluded that "the arbitrary actions of the [defendant] regarding the college coach, the dental surgery, enrichment program at Jackson, Wyoming, and the purchase of the used car, fall outside the realm of good faith and fair dealing."

Finally, with respect to the plaintiff's claim for attorney's fees, the court "reviewed the affidavit of counsel fees . . . dated July 18, 2019, and [found] it to be fair and equitable under all the circumstances." (Citation omitted.) Because the court "[did] not find the [plaintiff's] actions to [rise] to the level of wilful contempt, under all the [circumstances]," the court concluded that "it is equitable and appropriate for the court to award him reasonable attorney's fees in the amount of $14,930."

On the basis of the foregoing analysis, the court denied the defendant's motion for contempt. Notwithstanding its denial of the defendant's motion for contempt, the court ordered that the "plaintiff . . . pay in full any outstanding tuition and fees for the children's senior year at Choate Rosemary Hall and [that] he . . . reimburse the defendant . . . for any tuition and fees that she may have expended for their senior year." The court also ordered that the defendant pay the plaintiff's attorney's fees in the amount of $14,930 on the basis of its denial of the motion for contempt. This appeal followed.

I

We first address the defendant's claim that the court improperly denied the plaintiff's motion for contempt. Specifically, the defendant argues that the relevant portions of the agreement were sufficiently clear and unambiguous so as to support a finding of contempt. We disagree.

We begin by setting forth the legal principles relevant to this claim. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . [C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . .

It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . If we answer that question affirmatively, we then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Citations omitted; internal quotation marks omitted.) *Puff* v. *Puff*, 334 Conn. 341, 364–66, 222 A.3d 493 (2020).

General Statutes § 46b-66 (a) provides in relevant part that, "[i]f the court finds the [dissolution] agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ." In order to adjudicate the defendant's claim that the court erred in denying her motion for contempt, we begin by addressing the threshold question of whether the underlying court order, the dissolution agreement, was "sufficiently clear and unambiguous so as to support a judgment of contempt." (Internal quotation marks omitted.) *Pressley* v. *Johnson*, 173 Conn. App. 402, 408, 162 A.3d 751 (2017).

"It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citation omitted; internal quotation marks omitted.) *Dejana* v. *Dejana*, 176 Conn. App. 104, 114–15, 168 A.3d 595, cert. denied, 327 Conn. 977, 174 A.3d 195 (2017).

We conclude, as did the trial court, that the agreement was not a clear and unambiguous order because the language of the agreement is susceptible to more than one reasonable interpretation. Specifically, the agreement is ambiguous as to the commencement date for

the financial obligations imposed by the agreement.

In order to determine whether the agreement is clear and unambiguous, we examine the language of the agreement. Article III, which addresses alimony and child support, provides a definitive commencement date for the payment of the award of unallocated alimony and child support. It provides in relevant part: "Commencing on January 1, 2015, and on the first and fifteenth days of each month thereafter, the [plaintiff] shall pay to the [defendant], as unallocated alimony and child support until the death of either party, the [plaintiff's] remarriage, prior to the minor children's high school graduation or the completion of four . . . years of high school, or her cohabitation as defined in [General Statutes] § 46b-86 (b), or for a non-modifiable term of seven . . . years, the following percentages of his 'gross annual earned income from employment' . . . ."

On the other hand, article V, which provides for the payment of "[c]hildren's [e]xpenses," does not include a start date for the commencement of the financial obligations contained within it but, rather, indicates the division of payment responsibilities between the plaintiff and the defendant by referencing "years one through four" and "year five . . . ." Article 5.1 provides in relevant part: "*In year five*, and provided that the children are attending boarding or private school, the [plaintiff] shall pay 100 [percent] of [unreimbursed medical and dental] expenses." (Emphasis added.) Article 5.2 provides: "If the children, by agreement of the parties, attend boarding or private school, their tuition, room and board, *years one through four*, shall be paid [60 percent] by the [plaintiff] and [40 percent] by the [defendant]. *In year five*, tuition, room and board shall be paid [100 percent] by the [plaintiff]." (Emphasis added.) Finally, article 5.3 provides in relevant part: "*In year five*, if the children are attending boarding school, all of their expenses shall be paid [100 percent] by the [plaintiff]." (Emphasis added.)

We agree with the court that there are two reasonable interpretations of the commencement date for the financial obligations set forth in the agreement. To begin, because article 3.1 clearly states that the plaintiff's alimony obligation commenced on January 1, 2015, one logical interpretation is that all of the financial obligations set forth in the agreement also commence on January 1, 2015. Another logical interpretation, however, is that the agreement's financial obligations commence on March 4, 2015, the date of the agreement. This interpretation applies principally to the portions of the agreement, including article V, that do not specify a commencement date for the financial obligations that they impose. Because the commencement date for the relevant financial obligations contained within the agreement is susceptible to more than one reasonable

interpretation, the agreement is ambiguous with respect to this issue.

Further, the meaning of the words "years one through four" and "year five" for the purposes of article V is ambiguous. Article V provides for the division of the children's expenses while they attend boarding school. Instead of referring to specific academic years, such as freshman, sophomore, junior, and senior, article V references "years one through four" and "year five . . . ." In particular, the ambiguity stems from article 5.2, which provides that, "[i]f the children, by agreement of the parties, attend boarding or private school, their tuition, room and board, *years one through four*, shall be paid [60 percent] by the [plaintiff] and [40 percent] by the [defendant]. *In year five*, tuition, room and board shall be paid [100 percent] by the [plaintiff]." The way in which this section is written, particularly how it refers to the payment of boarding school tuition and room and board for "years one through four," creates ambiguity because "years one through four" in this context reasonably could be interpreted to mean the number of years that the children have attended boarding school. Other portions of the agreement, however, measure the years based on the number of years that have passed since the commencement of the financial obligations imposed by the agreement. Because article V is unclear as to whether its reference to "years one through four" and "year five" refer to specific academic years or years that have passed since the commencement of the financial obligations contained in the agreement, article V of the agreement is ambiguous.

Because we determine that the relevant portions of the agreement were not clear and unambiguous orders of the court, we conclude that the court did not err when it concluded that the plaintiff was not in contempt of the order.

## II

We next address the defendant's claim that the court improperly rewrote the separation agreement and modified the child support order retroactively. Specifically, the defendant argues that the "court improperly modified the . . . agreement by determining that articles 5.3 and 5.4 did not require the plaintiff to pay for [the] children's expenses." We disagree and conclude that the court did not modify the agreement but, rather, properly interpreted the agreement and determined that it did not cover several of the disputed expenses that the defendant unilaterally incurred. These expenses include the used car, the college coach, and the enrichment experience, as well as the hundreds of low monetary value expenses on the defendant's itemized list that cannot be characterized as "extracurricular."

"A trial court in a dissolution action has broad equitable powers under our dissolution statutes. . . . Those

powers do not, however, allow the court to rewrite a separation agreement that has been incorporated into the judgment of dissolution." (Citation omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 696, 941 A.2d 301 (2008). Instead, a court must treat a "separation agreement that has been incorporated into a dissolution decree and its resulting judgment . . . as a contract and [construe the agreement] in accordance with the general principles governing contracts." (Internal quotation marks omitted.) *Dejana* v. *Dejana*, supra, 176 Conn. App. 114.

"When construing a contract, [a court seeks] to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009).

The defendant claims that the court improperly rewrote the separation agreement and modified the child support retroactively. We disagree. Instead, we conclude that, when interpreting the agreement, the court properly determined that several expenses incurred by the defendant were not expenses that were covered under the agreement either because they did not fall under the language of the agreement or because they were not made in good faith and, therefore, that the plaintiff is not required to reimburse the defendant for such expenses.

With respect to this issue, the court noted in its memorandum of decision that "the [defendant] has blurred the lines in her claim, merging, for example, the children's snacks, allowance, haircuts, and clothing, to name just a few items that are clearly not 'extracurricular,' with some items that arguably fall into that category and are covered by the agreement and, as a result, could be the subject of a motion for contempt. The tuition at Choate Rosemary Hall would be a good example. [Additionally], the specific items that she has claimed, while they may be within the 'black letter' of the agreement, were made unilaterally, without the agreement of

the [plaintiff], were either unnecessary or an unusually large expenditure (e.g., 'college coach') and, hence, were not made in good faith. Accordingly, the [defendant] should be fully responsible for the cost of the college coach, the car purchased for the children, and the enrichment experience in Jackson, Wyoming." We analyze each of the disputed expenses in turn.

We first conclude that the plaintiff was not required to reimburse the defendant for the cost of the used automobile because it was not an expense covered by the agreement. We begin by determining whether the agreement was clear and unambiguous as to whether, under article 5.3, the cost to purchase an automobile for the children is a reimbursable expense. As we stated previously in this opinion, whether an agreement is clear and unambiguous is a question of law over which our review is plenary. See, e.g., *Isham* v. *Isham*, supra, 292 Conn. 181. We conclude that the contract language at issue is ambiguous because it is reasonably susceptible to more than one interpretation. The portion of article 5.3 on which the defendant relies in requesting reimbursement for the cost of the used automobile provides that the agreement covers "expenses for a child to obtain and hold a license to drive an automobile . . . ." Considering the ordinary meaning of the language in the agreement, it appears that this provision intended to cover expenses such as automobile insurance, driving lessons, other fees associated with obtaining a driver's license, or even costs associated with the maintenance of an automobile. The expense to purchase an automobile does not fall within the ordinary meaning of this provision because one does not need to own an automobile in order to obtain and hold a license to drive an automobile. The ambiguity with respect to this provision, however, stems from a parenthetical indicating that the expenses covered by article 5.3 include "car insurance, *cars* and related fuel and maintenance . . . ." (Emphasis added.) This portion of the agreement is ambiguous because the parenthetical suggests that an automobile is included in the covered expenses under article 5.3, but the language outside of the parenthetical, within its ordinary meaning, does not seem to encompass the purchase of an automobile.

Because "the language of [the agreement] is ambiguous, the determination of the parties' intent is a question of fact." (Internal quotation marks omitted.) *Isham* v. *Isham*, supra, 292 Conn. 181. The court determined that this clause was "drafted ostensibly to cover expenses for a child to obtain and hold a license to drive an automobile." (Internal quotation marks omitted.) The court reasoned that "one does not have to own or lease a car in order to obtain and maintain a driver's license, and a logical explanation would be that [the clause] was intended to cover the fuel and maintenance of a vehicle, as well as other expenses related to driving a car such as car insurance or driving lessons." (Internal

quotation marks omitted.) We conclude that the court's finding as to the clause's meaning, after considering all of the evidence, including the testimony of the parties, was not clearly erroneous. We therefore conclude that the court properly determined that the automobile was not an expense covered under the agreement and, therefore, the plaintiff was not required to reimburse the defendant for the cost of the automobile.

We now turn to the defendant's claims for reimbursement related to the expenses that she incurred for the college coach and the enrichment experience. Although these expenses appear to fall within the literal meaning of article 5.3, our resolution of these claims also requires us to examine whether the court's finding that the defendant's conduct did not comport with an implicit duty of good faith and fair dealing is supported by the record. "[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004).

We conclude that the court's finding that the defendant did not act in good faith under the agreement— with respect to the expense that she unilaterally incurred for the private college coach—was not clearly erroneous, and, therefore, the plaintiff is not required to reimburse the defendant for that expense. The court noted that parties to a separation agreement "should not take unfair advantage of contractual provisions that are wide open or less than clear," and they should "[honor] the spirit of [the] agreement . . . ." Although the agreement did include "college coaches" as a reimbursable expense under article 5.3, the court determined that the defendant's $51,500 expenditure for a private college coach was extravagant and unnecessary, particularly given the fact that Choate Rosemary Hall provides college counseling as part of the tuition package. Because we have determined that there is support in the record for the court's finding that the defendant did not act in good faith when she incurred this expense, we conclude that the finding is not clearly erroneous.

We therefore conclude that the plaintiff is not required to reimburse the defendant for this expense under the agreement.

We also conclude that the court properly found that the expense that the defendant incurred for the "enrichment experience" was not made in good faith, and, therefore, the plaintiff is not required to reimburse the defendant for that expense under the agreement. The court found that the enrichment program in Jackson, Wyoming, through the Grand Teton National Park Foundation was more akin to a vacation enjoyed by the defendant and her children than an extracurricular activity for the children. The court ultimately found that the defendant's unilateral decision to purchase the enrichment experience for the children, a significant expense, and to request the plaintiff's reimbursement for what appeared to be a vacation with the defendant, was not made in good faith under the agreement. We conclude that the court's finding with respect to the enrichment experience, on the basis of the evidence before it, was not clearly erroneous. Accordingly, the plaintiff is not required under the agreement to reimburse the defendant for this expense.

Finally, we conclude that, on the basis of the plain and unambiguous meaning of the agreement, the plaintiff was not required to reimburse the defendant for the litany of itemized expenses such as snacks, allowances, haircuts, and clothing because these expenses cannot be considered "extracurricular" or related to "[o]rganized [a]ctivities," and, therefore, they are not covered by article 5.3 of the agreement. Pursuant to the agreement, expenses covered under article 5.3 include "all school related educational, extracurricular and social activities; non-school related educational and extracurricular [activities]; organization/team/program fees, equipment, and team travel related expenses; all organized summer programs including transportation; enrichment programs such as music lessons, sports lessons, and the like; necessary tutors; [and] pre-boarding school and pre-college expenses, including, but not limited to, testing and preparatory classes, tutors, colleges coaches, application fees, [and] travel expenses for pre-application boarding school and college visits . . . ." The defendant, in her itemized list for reimbursement, has outlined hundreds of expenses, merging some expenses that fall under article 5.3 with others that clearly do not. For example, the defendant included in the itemized list many expenses for things such as clothing, snacks, allowances, and haircuts, which clearly are not expenses that can be considered "[e]xtracurricular . . . ." Having already discussed in detail the higher monetary value items that are the subject of the defendant's claims for reimbursement under the agreement, we note that it would serve no useful purpose to individually address in this opinion the hundreds of other, lower monetary value expenses listed

by the defendant that are also the subject of this claim. Nonetheless, we have considered each of these expenses and conclude for reasons similar to those already discussed herein, that the court properly found that the plaintiff was not obligated under the agreement to reimburse the defendant for these expenses.

We conclude that (1) the court's finding that the parties did not intend for the agreement to cover the cost to purchase an automobile for the children was not clearly erroneous, and, therefore, the court properly determined that the automobile was not an expense covered under the agreement; (2) the court's findings that the defendant did not act in accordance with the implied duty of good faith when she incurred the expenses for the college coach and the enrichment experience were not clearly erroneous, and, therefore, the court properly determined that the plaintiff was not required to reimburse the defendant for these expenses under the agreement; and (3) on the basis of the plain meaning of the agreement, the large number of low monetary value expenses on the itemized list, including clothing, snacks, allowances, and haircuts, cannot be considered "[e]xtracurricular," and, therefore, they are not covered under the agreement. On the basis of these conclusions, we further conclude that the court did not rewrite the separation agreement or retroactively modify the child support. Instead, the court properly determined that these expenses were not covered under the agreement, and, therefore, the plaintiff was not required to reimburse the defendant for these expenses.

### III

We next address the defendant's claim that the court abused its discretion by failing to find an arrearage with respect to the plaintiff's obligation to pay for expenses related to the parties' children under the agreement[10] and enter orders to preserve the integrity of the agreement. As we iterated in part II of this opinion, the court, upon interpreting the agreement, properly concluded that the agreement did not require the plaintiff to reimburse the defendant for several of the disputed expenses that she incurred, and, accordingly, the court did not err in failing to find an arrearage and enter orders with respect to those expenses.

It is well established that, "[i]n a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Emphasis omitted; internal quotation marks omitted.) *Fuller* v. *Fuller*, 119 Conn. App. 105, 115, 987 A.2d 1040, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010). "Courts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion

whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Pressley* v. *Johnson*, supra, 173 Conn. App. 408. "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Fuller* v. *Fuller*, supra, 115.

The court did not abuse its discretion when it did not enter orders requiring the plaintiff to reimburse the defendant under article 5.3 of the agreement for particular "[c]hildren's expenses" that the defendant unilaterally incurred. For the reasons set forth in part II of this opinion, the court properly concluded that the expenses that the defendant unilaterally incurred for the numerous itemized expenses, including snacks, allowances, haircuts, and clothing, as well as the used automobile, the college coach, and the enrichment experience, were either not covered under article V of the agreement or were not made in good faith. Therefore, the court did not abuse its discretion when it did not enter orders requiring the plaintiff to reimburse the defendant for such expenses.[11]

IV

The defendant next claims that the court erred in concluding that he was not entitled to reimbursement for the cost of the children's dental procedures performed by an out-of-network oral surgeon. Specifically, the defendant claims that, in denying reimbursement for the cost of the out-of-network dental procedures, the court relied on findings of fact that were clearly erroneous. We disagree.

The following additional facts are relevant to this claim. At the evidentiary hearing conducted by the court on December 4 and 6, 2019, both the plaintiff and the defendant testified with respect to the disputed expenses for the children's dental procedures. The defendant testified that the children "needed to get their wisdom teeth pulled. I asked [the plaintiff] to make an appointment. He didn't. I finally did because they had an infection. They had an appointment in . . . April, and a week before my appointment, [the plaintiff] told the kids that he had an appointment for them the next day with an in-network oral surgeon. . . . I ultimately took them to the [out-of-network] dentist, the oral surgeon who [one of the children] had previously had his teeth pulled by, and [the plaintiff] refused to make the payment for an out-of-network oral surgeon." The defendant further testified that the expense for the oral surgeon was incurred in April, 2018. She also testified that she charged the plaintiff 60 percent of the total cost of the procedures but that he paid her only $900, and that "[h]e insisted that we use an in-network, [non-board] certified oral surgeon." When asked on cross-examination about whether the plaintiff sent her a list

of in-network dentists to be used for the dental procedure, the defendant replied, "[y]es, the night before the appointment." Further, when asked whether the agreement stated that "each party shall obtain the agreement of the other when a child requires nonemergency, nonroutine medical treatment but such approval shall not unreasonably be withheld," the defendant indicated that the agreement did so provide. Finally, the defendant indicated during cross-examination that the plaintiff did not agree with her unilateral choice of an out-of-network dentist and that the plaintiff told her that he would be willing to share the cost to have an in-network dentist to perform the procedure.

The plaintiff testified that the first time he learned that the children needed oral surgery was in mid-April, 2018. The plaintiff testified that, after learning that the children needed oral surgery: "I obtained copies of their dental X-rays. I researched available dentists. . . . I spoke to a dentist on the phone in Stamford, a Dr. William Kim. I went and, in person, met with . . . Kim, [and] showed him the X-rays . . . ." The plaintiff further testified that Kim is an in-network, board certified dentist. After obtaining information from Kim during the initial meeting, the plaintiff testified that he scheduled an appointment for the children to have the necessary procedure performed. The plaintiff testified that, after he made the appointment, he "notified [the defendant] of the date of the appointment and of the doctor's name and bio." This notification occurred in the "[m]iddle of April." The plaintiff further testified that the defendant instead took the children to an out-of-network oral surgeon of her choosing in early June. When asked if he knew why the defendant did not meet or confer with the in-network, board certified dentist that the plaintiff had referred to her, the plaintiff testified that the defendant "researched the background of the wrong Dr. Kim." The plaintiff testified that he reimbursed the defendant $900 for the dental procedures because he "believed it was the reasonable payment for the services of an in-network doctor."

With respect to the dental expenses, the court found that "[t]he parties do not appear to have a dispute as to the application of their respective shares of these expenses but, rather, to specific expenditures. For instance, the [defendant] seeks 100 [percent] reimbursement from the [plaintiff] for a dental procedure for the children. The [plaintiff] had made long-standing arrangements for the procedure to be done by an in-network dentist, and, at the last minute, the [defendant] arbitrarily changed to an out-of-network oral surgeon, claiming that it was an emergency. The dental surgeon's bill was $5775. . . . The [defendant] did not offer any credible evidence or expert testimony as to the nature of the procedure and much less the necessity that it be performed quickly and by whom. Under all the circumstances, it would be unfair to make the [plaintiff] bear

the entire cost over and above the normal charges that he had already made arrangements to have done." (Citation omitted.) The court ultimately determined that "[t]he [plaintiff's] liability for the dental surgery should be limited to 60 [percent] of the cost of the procedure performed by the in-network dentist or oral surgeon."

The defendant claims that the court erred in concluding that she was not entitled to full reimbursement for the cost of the dental procedures performed by the out-of-network oral surgeon because the court made and relied on findings of fact that were clearly erroneous with respect to the dental procedure. In her brief, the defendant asserts that, "[b]ased on the evidence, the trial court found, [t]he [plaintiff] had made long-standing arrangements for the [dental] procedure to be done by an in-network dentist, and, at the last minute, the [defendant] arbitrarily changed to an out-of-network oral surgeon, claiming that it was an emergency. . . . The trial court proceeded to find that it would be unfair for the [plaintiff] to pay the entire cost of [the] oral surgery, above the amount he would have paid for the in-network dentist. . . . The trial court accordingly denied the relief sought, which was reimbursement of $2450 under article 5.1. . . . *The trial court's denial of the reimbursement request was based on clearly erroneous findings of fact.*" (Citations omitted; emphasis added; internal quotation marks omitted.)

Our review of this claim requires us first to determine whether the facts as found by the court are clearly erroneous and then to interpret the language of the agreement. As we stated previously in this opinion, a separation agreement that has been incorporated into a dissolution decree and its resulting judgment are treated as a contract and construed in accordance with the general principles governing contracts. See, e.g., *Dejana* v. *Dejana*, supra, 176 Conn. App. 114. "The standard of review for the issue of contract interpretation is well established. When . . . there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Giedrimiene* v. *Emmanuel*, 135 Conn. App. 27, 34, 40 A.3d 815, cert. denied, 305 Conn. 912, 45 A.3d 97 (2012). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Martin* v. *Martin*, 101 Conn. App. 106, 110, 920 A.2d 340 (2007).

We conclude that the findings of fact made by the court with respect to this claim were not clearly erroneous. The plaintiff testified that he scheduled an appointment for the children to have their teeth extracted by an in-network dentist. The plaintiff testified that he then notified the defendant of the date of the appointment. The plaintiff further testified that the defendant instead took the children to an out-of-network oral surgeon whom she had chosen for an appointment that occurred after the date on which the plaintiff had scheduled the appointment for the children's procedures with the in-network dentist. On the basis of the plaintiff's testimony, there was evidence in the record to support the court's finding that the plaintiff made arrangements for the procedure to be done by an in-network dentist and that, instead, the defendant insisted that the procedures be performed by an out-of-network oral surgeon, claiming that it was an emergency. Further, it is clear from the record that the defendant did not offer any credible evidence or expert testimony as to the nature of the procedure or the necessity that it be performed quickly and by a particular oral surgeon. On the basis of our review of the entire record, we are not persuaded that a mistake has been committed. The findings of the court with respect to the dental procedures, therefore, are not clearly erroneous.

Having concluded that the facts, as found by the court, were not clearly erroneous, we next interpret the language of the agreement to determine whether the court erred in concluding that the defendant was not entitled to reimbursement for the cost of the children's dental procedures. Article 5.1 of the agreement specifically addresses the payment of the children's unreimbursed medical and dental expenses. It provides: "The [plaintiff] shall pay [60 percent] and the [defendant] shall pay [40 percent] of any reasonably incurred, unreimbursed or uninsured medical expense for the benefit of the children. In year five, and provided that the children are attending boarding or private school, the [plaintiff] shall pay [100 percent] of said expenses. Each party shall obtain the agreement of the other when a child requires non-emergency, non-routine medical treatment, but such approval may not unreasonably be withheld. The parties shall account to each other and make payments to each other in accordance with this obligation on a quarterly basis. Both parties may submit claims directly to the insurer, and reimbursement to the party who advanced payment shall be made within [ten] days after submission of proof of payment." We conclude that the court did not err when it determined that the plaintiff's liability for the dental surgery should be limited to 60 percent of the cost of the procedure

performed by the in-network dentist or oral surgeon.

Under the definitive language of the agreement, "[e]ach party shall obtain the agreement of the other when a child requires non-emergency, non-routine medical treatment, but such approval may not unreasonably be withheld." Because the defendant did not present any evidence establishing that the procedure was emergent in nature, article 5.1 required that she obtain the plaintiff's agreement for the procedure. The plaintiff did not agree to have the children's procedure performed by the out-of-network dentist but, rather, indicated that he would share the cost of the procedure performed by an in-network dentist, as was his prerogative under the agreement. We therefore conclude that the court did not err when it determined that the defendant was not entitled to reimbursement for the cost of procedures performed by the out-of-network oral surgeon. The court properly concluded that the defendant was entitled to reimbursement for 60 percent of the cost of the procedures performed by an in-network dentist or oral surgeon.

V

Finally, the defendant claims that the court abused its discretion by ordering her to pay attorney's fees to the plaintiff under § 46b-87. Specifically, the defendant claims that the court erred in awarding the plaintiff attorney's fees because it also ordered the plaintiff to reimburse the defendant for the children's boarding school tuition under the agreement. We disagree and conclude that the court did not abuse its discretion when it ordered the defendant to pay attorney's fees to the plaintiff because the court found in favor of the plaintiff on the motion for contempt.

Section 46b-87 allows the court in its discretion to award attorney's fees to the prevailing party in a contempt proceeding. See *Gil* v. *Gil*, 110 Conn. App. 798, 806–807, 956 A.2d 593 (2008). Section 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the [party who brought the motion for contempt] a reasonable attorney's fee . . . such sums to be paid by the person found in contempt . . . ." Likewise, "if any such person is found not to be in contempt of such order, the court may award a reasonable attorney's fee to such person." General Statutes § 46b-87.

"Moreover, because the award of attorney's fees pursuant to § 46b-87 is punitive, rather than compensatory, the court properly may consider [a party's] behavior as an additional factor in determining both the necessity of awarding attorney's fees and the proper amount of any award." *Esposito* v. *Esposito*, 71 Conn. App. 744, 750, 804 A.2d 846 (2002).

On appeal, "[w]e review a trial court's [ruling] as to attorney's fees . . . for an abuse of discretion. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Gil* v. *Gil*, supra, 110 Conn. App. 802–803.

We conclude that the court did not abuse its discretion when it awarded the plaintiff attorney's fees in the sum of $14,930. Because the court "found [the plaintiff] not to be in contempt of [the] order," it could, in its discretion, "award a reasonable attorney's fee to [the plaintiff]." General Statutes § 46b-87. The court properly exercised its discretion when it concluded that, "as the court does not find the [plaintiff's] actions to arise to the level of wilful contempt, under all the circumstances, it is equitable and appropriate for the court to award him reasonable attorney's fees in the amount of $14,930."

Moreover, the court made several factual findings with respect to the defendant's behavior, which are relevant to the issue of attorney's fees. The court noted that "the [defendant] has offered to the court several exhibits outlining her out-of-pocket expenditures on behalf of the children, the list is very comprehensive, detailing even the smallest, inconsequential items [such] that the court questions her good faith and perspective. In particular, she has made arbitrary expenditures based upon a strict reading of the agreement." (Emphasis omitted.) The court also noted that operation of the agreement "relies upon the good faith and good judgment of each of the parties, *something the [defendant] has clearly not exercised.*" (Emphasis added.) It is clear that the court considered the behavior of the defendant, namely, her lack of good faith in making expenditures under the agreement, when it awarded attorney's fees to the plaintiff. This was a proper consideration for the court because attorney's fees under § 46b-87 are punitive rather than compensatory, and the court may consider the defendant's behavior in determining the necessity of awarding attorney's fees. See *Esposito* v. *Esposito*, supra, 71 Conn. App. 750.

The fact that the court ordered the plaintiff to reimburse the defendant under the agreement does not impact the court's ability to award attorney's fees to the plaintiff as the prevailing party on the issue of contempt. It is well established that "[c]ourts have in general the power to fashion a remedy appropriate to the vindication of a prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to

fashion whatever orders [are] required to protect the integrity of [its original] judgment. . . . This is so because [i]n a contempt proceeding, *even in the absence of a finding of contempt*, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Pressley* v. *Johnson*, supra, 173 Conn. App. 408.

In the present case, as we explained previously in this opinion, the court did not find the defendant in contempt of the order because it determined that the agreement was not clear and unambiguous. Upon so finding, the court had the authority, in the exercise of its equitable powers, to fashion an order designed to protect the integrity of the dissolution judgment. To that end, the court ordered that the plaintiff pay any outstanding tuition for the children's senior year of boarding school and reimburse the defendant for any tuition that she had already paid for that year. Notwithstanding this order, because the plaintiff was the prevailing party *on the issue of contempt*, the court had the discretion, under § 46b-87, to award attorney's fees to the plaintiff. Because we have determined that the court reasonably could have reached the conclusion that it did, we conclude that the court did not abuse its discretion in awarding attorney's fees to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Article 5.1 of the agreement provides: "The [plaintiff] shall pay 60 [percent] and the [defendant] shall pay 40 [percent] of any reasonably incurred, unreimbursed or uninsured medical expense for the benefit of the children. In year five, and provided that the children are attending boarding or private school, the [plaintiff] shall pay 100 [percent] of said expenses. Each party shall obtain the agreement of the other when a child required non-emergency, non-routine medical treatment, but such approval may not unreasonably be withheld. The parties shall account to each other and make payments to each other in accordance with this obligation on a quarterly basis. Both parties may submit claims directly to the insurer, and reimbursement to the party who advanced payment shall be made within [ten] days after submission of proof of payment."

[2] Article 5.2 of the agreement provides: "If the children, by agreement of the parties, attend boarding or private school, their tuition, room and board, years one through four, shall be paid [60 percent] by the [plaintiff] and [40 percent] by the [defendant]. In year five, tuition, room and board shall be paid [100 percent] by the [plaintiff]."

[3] Article 5.3 of the agreement provides in relevant part: "Children's expenses during their school years shall be paid [60 percent] by the [plaintiff] and [40 percent] by the [defendant]. In year five, if the children are attending boarding school, all of their expenses shall be paid [100 percent] by the [plaintiff]. Such expenses to be shared by the parties shall include, but are not limited to, all school related educational, extracurricular and social activities; non-school related educational and extracurricular [activities]; organization/team/program fees, equipment, and team travel related expenses; all organized summer programs including transportation; enrichment programs such as music lessons, sports lessons, and the like; necessary tutors; pre-boarding school and pre-college expenses, including, but not limited to, testing and preparatory classes, tutors, college coaches, application fees, travel expenses for pre-application boarding school and college visits; driver's education and other expenses for a child to obtain and hold a license to drive an automobile (car insurance, cars and related fuel and maintenance) and the like."

[4] Article 5.4 of the agreement provides: "In the event the [defendant] has paid, on behalf of the children, any of the expenses set forth in paragraph 5.3 for which the [plaintiff] is responsible, the [plaintiff] shall reimburse the [defendant] for the amount she has paid one month after proof of payment."

[5] Article 3.5 of the agreement provides: "In the event that alimony payments terminate, for whatever reason, and the [plaintiff] is obligated to provide child support for the parties' children pursuant to [General Statutes] § 46b-84, then the parties shall determine the amount of child support to be paid by the [plaintiff] to the [defendant] retroactive to the date alimony ended. The [plaintiff] shall make child support payments until the children reach the age of [eighteen], unless the children have not graduated from high school, in which event, the [plaintiff] shall pay child support until the later of the children's graduation from high school or the children's [nineteenth] birthday."

[6] General Statutes § 46b-84 (a) provides in relevant part: "Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. . . ."

General Statutes § 46b-84 (b) further provides in relevant part: "If there is an unmarried child of the marriage who has attained the age of eighteen and is a full-time high school student, the parents shall maintain the child according to their respective abilities if the child is in need of maintenance until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first. . . ."

[7] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

[8] In its memorandum of decision, the court found "particularly troubling" the course of action taken by the parties after the defendant's remarriage, which caused, under the terms of the agreement, the termination of the defendant's alimony and led the plaintiff to "[make] no further alimony payments to the [defendant]." The court observed that neither the plaintiff nor the defendant took any steps to unbundle the existing unallocated award for the purpose of determining the appropriate amount of child support for the two children, who had a right to parental support under § 46b-84 (b). The court stated that, "[i]nstead of ignoring the issue, or worse, using self-help, the better procedure is for one of the parties to move either for a modification based upon substantially changed circumstances, or a motion for order to determine child support. In that way, the court would have an opportunity to determine whether, under all the circumstances, the children are in need of maintenance and, if so, to award an appropriate amount of child support and, more important, to protect the fundamental legal right of the minor children to receive it. Instead, their informal arrangement, and the [defendant's] attempt to enforce it and the ambiguous terms of their court-approved agreement, through contempt, have simply complicated the process."

Although, at the hearing on the motion for contempt, the parties did not request that the court determine the appropriate amount of child support after the defendant remarried, and the defendant does not raise a claim of this nature in this appeal, we emphasize that the trial court's criticism of the parties' course of action was entirely appropriate. As this court has observed, it is well established that "the independent nature of a child's right to support . . . [is a] right [that] cannot be vitiated or circumscribed by way of an agreement between the parents. . . . [Parents] cannot make a contract with each other regarding the maintenance or custody of their child which the court is compelled to enforce . . . ." (Citations omitted; internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 731–32, 197 A.3d 1000 (2018). "[A]s a matter of public policy . . . issues involving custody, visitation, and child support must be resolved only by a court." Id., 733. The trial court identified the parties' failure to seek judicial assistance when modification became necessary. See, e.g., *Riscica* v. *Riscica*, 101 Conn. App. 199, 201, 921 A.2d 633 (2007). Even though neither party sought judicial assistance when the alimony portion of the unallocated award terminated, the trial court in family matters is vested with wide discretion and broad equitable powers. The court had the opportunity to take steps to rectify the problem it had identified, and perhaps it should have done so. "The power to act equitably is the keystone to the court's

ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . ." (Internal quotation marks omitted.) *Foisie* v. *Foisie*, 335 Conn. 525, 543, 239 A.3d 1198 (2020). "For that reason, equitable remedies are not bound by formula but are molded to the needs of justice." (Internal quotation marks omitted.) Id. Nevertheless, because this issue has not been raised in the trial court or in this appeal, we address it no further.

[9] In its memorandum of decision, the court stated: "It has long been the law, that, based upon their 'unique human relationship,' divorcing spouses owe a duty to each other of 'full and frank disclosure' of their financial circumstances, 'no less than' if they were in a 'fiduciary to beneficiary' relationship. . . . It is not a stretch to find that, in their postjudgment dealings, especially when it comes to their children, that the parties also have a duty of fair dealing in the execution of their agreements. Courts have encouraged agreements by and between parties as a means to avoid conflict and to resolve differences. While each is entitled to their opinion as to the meaning of a particular clause, in doing so, they should not take unfair advantage of contractual provisions that are wide open or less than clear. In other words, honoring the spirit of an agreement is just as important, and to ignore it is likely to lead to unnecessary conflict and the concomitant waste of assets. This case is a prime example." (Citation omitted.)

[10] For clarification, we note that the defendant did not ask the trial court to find an arrearage related to an order of child support, nor is that an issue raised in this appeal.

[11] We note that the court did order the plaintiff to reimburse the defendant for the children's tuition at Choate Rosemary Hall for their senior year. The court found that, although the agreement was "ambiguous and the [plaintiff's] actions do not rise to the level of contempt . . . the intent of the parties was to use the calendar year and not the designated school year (i.e., freshman, sophomore, etc.) as a basis for determining the respective responsibilities of the parties . . . ." The court ultimately found that, under the agreement, "the children's senior year at Choate Rosemary Hall is the '[fifth] year' . . . contemplated by the parties and that the [plaintiff's] obligation is [100 percent] thereof." The fact that the court, in the absence of a finding of contempt, ordered the plaintiff to reimburse the defendant for the children's boarding school tuition after interpreting the agreement to require him to do so demonstrates that the court was aware of its ability to enter orders to preserve the integrity of the agreement.